**STATE of Missouri, Respondent,**

v.

**David BARRON, Appellant.**

No. 55658.

Supreme Court of Missouri,
Division No. 2.

March 8, 1971.

Motion for Rehearing on Transfer to Court
En Banc Denied April 12, 1971.

Avenue in the City of St. Joseph occurred in the early morning hours of September 18, 1969. Entrance was obtained by removing a window pane from a storeroom window, and then by breaking through the connecting door into the garage. Two police officers, in separate automobiles, arrived at the garage before the burglar departed. Officer Donald E. Egelhoff testified that he saw a person in the garage, and that the person was appellant. Officer Herman C. Merrill also arrived on the scene about the same time, and he saw a person in the garage whom he identified as appellant. However, the person in the garage escaped out a window and ran, and although the officers attempted to apprehend him they were not able to do so.

At the side of the garage was an automobile, later established to belong to appellant, and in the front seat the officers found a wallet in which was an operator's license issued to appellant. Later that morning two other police officers went to appellant's home and arrested him. Shortly after he was brought to the police station Officers Egelhoff and Merrill each saw him, and each testified on direct examination that at that time he identified appellant as the person he had previously seen in the garage.

Appellant's first point is that "Identification procedures followed by the St. Joseph Police Department and the action of the trial court supportive thereof, were so conducive to irreparable mistaken identity as to be a denial of due process of law."

From the argument we find that by this point appellant contends that the police station identification by Officers Egelhoff and Merrill constituted the "widely condemned" practice of "showing suspects singly to persons for the purpose of identification and not as a part of a lineup," and (2) that the trial court refused to permit counsel to have the appellant sit back of the rail in the general audience and then have the witnesses attempt to identify him in those circumstances.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

STOCKARD, Commissioner.

Appellant, David Barron, was found guilty by a jury of burglary in the second degree, but the jury failed to declare the punishment by their verdict, and the trial court, pursuant to § 546.440, RSMo 1969, V.A.M.S., determined the sentence to be imprisonment for two years, the minimum.

There is no question but that a burglary of an automobile garage at 1925 St. Joseph

■ We note that appellant did not file a pre-trial motion to suppress testimony of identification by the officers at the police station, and further, that when each officer testified on *direct examination* that he had identified the appellant at the police station no objection whatever was made. Appellant sets forth verbatim in his brief certain testimony of each officer concerning the identification at the police station, but in each case the testimony so set forth is that which was given on *cross-examination* in answer to questions asked by appellant's counsel. For these reasons, any objection to the testimony of the police officers concerning identification by the police officers at the station has been waived. "Timely objection at the trial, and preservation of the objection in the motion for new trial, must be made in order to preserve the point for appellate review." State v. Brownridge, Mo., 459 S.W.2d 317. See also State v. Franklin, Mo., 448 S.W.2d 583, and State v. Hampton, Mo., 430 S.W.2d 160.

■ Assuming that this matter could be the subject of examination pursuant to Supreme Court Rule 27.20(c), V.A.M.R., pertaining to plain error, it has no merit. The officers either accidentally without design saw appellant at the police station and identified him, or they saw him pursuant to an arrangement to do so. The record does not indicate which it was. If it was the former, the situation is ruled by the recent case of State v. Bibbs, Mo., 461 S.W.2d 755. If it was the latter, the situation is ruled by State v. Hamblin, Mo., 448 S.W.2d 603. We find no justification for invoking the plain error rule.

The second part of this point also is without merit. The factual situation was that during the voir dire examination appellant was sitting outside the rail in the audience, and the prosecuting attorney asked that he "take his seat." Appellant's counsel stated he did not want him at the counsel table, and in "making a record" he stated that he had appellant outside the rail with members of his family "in order that the identification of the defendant is not facilitated by his being segregated from everybody else." The court stated that it would not permit "a demonstration," but it further stated that it would "rule on the matter when it comes up." The voir dire examination continued, but the record does not show whether appellant remained outside the rail during the remainder of the voir dire. During the discussion, counsel for appellant stated that he would "move him right down there as soon as the jury is empaneled." In any event, during the trial there was no request that the police officers identify the appellant from the audience, and apparently he was seated at the counsel table. Therefore, the court was not called upon to rule the matter as it indicated it would do.

■ Under these circumstances we find nothing presented for appellate review. But, making the necessary assumptions to consider what appellant apparently wanted to do, but abandoned because the court stated it would not permit a "demonstration," this is a matter concerning the conduct of the trial and courtroom procedure over which the trial judge has a wide discretion. State v. Turner, Mo., 320 S.W.2d 579, 584. The record before us does not demonstrate an abuse of that discretion.

Appellant next contends that he was denied a "fair trial and * * * equal protection of the law, in that the physical evidence found at the scene of the alleged crime was not preserved, and defendant thereby was prevented from establishing his innocence."

By this point appellant has reference to the fact that the police did not take possession of and preserve a broken screwdriver, a pane of glass, the soft-drink machine and coin box, the numerous tools which had been moved by the burglar, and defendant's automobile which was parked near the garage. He also contends that the police should have "dusted" the items for fingerprints, which they did not do. Appellant admits that he has no case authority

to support his position, but he contends that if the police had taken possession of these items they could have been examined for fingerprints, and "had any borne fingerprints or indicia of contact of other persons, this would have tended to support [his] alibi."

We do not have here deliberate suppression of evidence favorable to an accused as in State v. Thompson, Mo., 396 S.W.2d 697. What appellant really contends is that (1) the State should have done a better job in preparing its case by seizing and holding the enumerated items, and if this had been done the items would then have been available to him, or (2) that the State must investigate any matter which might result in the discovery of evidence favorable to an accused. One of the officers testified that after he saw a person in the garage and identified that person as appellant, and after having found his automobile and billfold at the scene, he did not think additional investigation was necessary. Whether he was right was a matter of judgment. If the police had done more after arriving at that conclusion, they then would have been doing the investigation work for the accused, which they are not required to do. See State v. Reynolds, Mo., 422 S.W.2d 278.

■ The items were not available at trial, and of course are not now available. Therefore, nothing could be gained by a new trial. The effect of appellant's contention is that he should be discharged. However, it is purely speculative that the items would have been helpful to appellant. We do not agree that the circumstances justify a reversal of the judgment.

Appellant next asserts in his third point that "The trial judge failed to maintain an attitude of scrupulous fairness, and permitted his belief in the guilt of defendant to be reflected in his reaction to witnesses and counsel."

During rebuttal argument by the prosecuting attorney, he turned to counsel for ap-

pellant and said, "Is it funny?" What brought about this remark is not shown by the record, and we are not here concerned with the propriety of counsel making such a remark to other counsel instead of addressing any complaints to the court. Counsel for appellant then stated to the court that he had not "addressed any remarks to [State's] counsel," and the court replied: "I know what he is talking about. Let's just keep our faces straight and act proper." No objection was then made concerning the remark of the court, and no relief was requested. Counsel, by inference, indicates in his brief that there was something done by him to bring on the comment, because he says "if any one in the courtroom were entitled to carry upon his face an expression of partiality, whether frown or smile, in favor of defendant, it would be his attorney." He argues, however, that it was "grossly improper" for the court to reprimand him.

■ Aside from the fact that no objection was made to the remark of the court and no relief was requested, the remark was in the nature of an admonishment to counsel, a matter within the discretion of the trial court. State v. Gyngard, Mo., 333 S.W.2d 73. The record implies that the admonishment was not totally without justification, and under the circumstances we see no abuse of discretion.

■ A second occurrence relied on by appellant is that, as he asserts in his motion for new trial, when a brother of appellant testified that appellant was at home watching television on the night of the burglary, the trial judge "placed his hands flat to the sides of his head, shook his head negatively once, leaned back and swiveled his chair 180° around." This, of course, is not revealed by the record, and even though the motion for new trial was verified by appellant's counsel, it does not necessarily prove itself. State v. Anderson, Mo., 254 S.W.2d 638; State v. White, Mo., 301 S.W.2d 827. There was no other evidence of its occurrence. However, in any event,

at the time appellant asserts this incident occurred, no objection was made and no relief was requested. The alleged action of the trial judge, if it occurred, would have the same effect as a remark or comment by the trial judge, and the rule is concisely stated in State v. McCullough, Mo., 411 S.W.2d 79, 81 as follows: "If a party believes that remarks [by the court] may prejudice his cause, he should object immediately and afford the court an opportunity to correct any erroneous impression, and the issue is not timely presented when raised for the first time in a motion for a new trial." An accused in a criminal case cannot remain silent under the circumstances which appellant asserts here occurred, and thereby gamble on a favorable verdict by permitting the trial to go to conclusion without objection, and then contend for the first time in a motion for new trial that reversible error occurred. State v. Whitaker, Mo., 275 S.W.2d 316; State v. Mosier, Mo., 102 S.W.2d 620.

In his fourth point appellant asserts that the prosecuting attorney was guilty of "prejudicially improper argument and conduct" in that (a) matters (without setting them out) "Properly belonging to opening argument were reserved for rebuttal, and argument went beyond and contrary to the evidence," (b) rebuttal argument "went extensively beyond the scope of defense argument," and (c) the prosecuting attorney commented improperly on the fact that appellant testified in his own behalf.

As to subpoint (a), appellant sets forth in the argument portion of his brief a portion of the opening argument of the prosecuting attorney and also a short statement from the rebuttal argument. That argument was directed to the absence of Gary Smith, a companion of appellant on the day of the burglary, and a person whom the testimony of defendant indicated might have been the burglar instead of defendant. The substance of the argument was that the police were not told about Gary Smith and that he was not mentioned until defendant testified at the trial. However,

defendant did testify that he had mentioned Gary Smith at the preliminary hearing, but that no one asked him whether Gary Smith looked like him. An objection was made on the grounds that the argument was contrary to the evidence. We are of the opinion that it was. The court stated that the testimony was that "nobody asked him." The prosecuting attorney then stated that there had been no description given of Gary Smith, which also was not in accord with the testimony, but to which no objection was made.

The above occurred in opening argument. Technically, the argument was wrong, but appellant could in his argument answer and point out what the testimony was if the substance of it was considered to be material. Every error which might occur in the trial of a case does not necessarily call for a mistrial, State v. Smith, Mo., 431 S.W.2d 74, 84, or after trial require a reversal on appeal. Prejudice must occur to justify a reversal, and we do not see how this minor deviation in the statement of what was in the testimony constituted prejudice. Such occurrences can, and not infrequently do occur when the counsel and the judge must necessarily rely on memory as to the testimony. Counsel for appellant could and did reply in his argument. There was nothing inflammatory in the argument, and we consider the incident to be inconsequential and not prejudicial.

In rebuttal, the prosecuting attorney asked where Gary Smith was, and that if he looked like appellant he should have been called as a witness. The objection was that "this is improper rebuttal," and appellant's counsel then said, "He [the prosecutor] asked this question on his original argument and I answered it on my argument." This establishes that it was permissible argument on rebuttal.

Appellant also sets out in his brief the argument of the prosecuting attorney that appellant's wife did not want to answer the door when the police officers first

went there, and that no one answered their knock on the door, but that "when her husband got home then she went to the door * * *." Apparently the contention is that this was not supported by the evidence. However, it was a permissible inference that could have been drawn from the evidence, and therefore a proper subject for argument.

■ As to subpoint (b), appellant sets out in his brief certain argument of the prosecutor when he commented on the absence of Gary Smith and asked why he was not called as a witness. The objections were that it was "improper rebuttal." However, counsel for appellant did comment on the absence of Gary Smith. The prosecutor may comment on the failure of defendant to call a witness who would be expected to give testimony favorable to his case, State v. Beasley, 353 Mo., 392, 182 S.W.2d 541, and it also pertained to a matter referred to by appellant's counsel in his argument.

As to subpoint (c), in which appellant asserts that the prosecuting attorney commented improperly on the fact that he had testified, he relies on the following argument by the prosecutor: " * * * and the unbelievability of the alibi which he had no obligation to bring in the first place, and which adds evidence to the fact that he wasn't there. If he wasn't—if he wasn't there why didn't he just say it? Why did he come in with a story that you can't believe and doesn't make sense?"

■ First, there was no objection to the argument, and therefore the point presents nothing for appellate review. State v. Clark, Mo., 412 S.W.2d 493. Second, defendant took the stand and testified, and his testimony was subject to comment the same as any other witness. The prosecutor has a right to comment on the credibility of the witnesses for the defense. State v. Sallee, Mo., 436 S.W.2d 246. Third, we do not consider the argument to be a comment on the fact that appellant elected to testify in his own behalf.

Appellant next asserts that the "trial court coerced the verdict of the jury, and accepted an invalid verdict." In subpoints appellant asserts (a) the verdict was not responsive to the instructions, (b) the trial court permitted the jury to evade its responsibility to determine punishment, and (c) the court coerced the jury by giving what is sometimes referred to as a "hammer" instruction after the jury had deliberated approximately three hours.

Instruction 6 was the verdict directing instruction. Instruction 9 concerned the forms of verdict, and it contained the statement that the jury should first determine the issue of guilt, and if the defendant was found to be guilty "you should fix his punishment." It also provided: "If however after due deliberation you find the defendant guilty but are unable to agree upon his punishment, you may return a guilty verdict form so stating and in that event, but not otherwise, the court will fix the punishment." The jury verdict read: "We, the jury, find the defendant guilty of burglary in the second degree as defined in Instruction No. 9. We fix his punishment at ————." The court inquired as to the reason for the blank space, and the foreman replied that the jury had tried to fix the punishment but could not "reach a decision." The form of verdict contained a blank space for the number of the instruction, and the jury inserted the number "9."

■ Apparently appellant's position is that the verdict is void because the jury did not report *in writing* that it could not arrive at the punishment. We consider this to be of no merit. A verdict in a criminal case is to be reasonably construed to arrive at the intention of the jury. State v. Saussele, Mo., 265 S.W.2d 290, 294; State v. Newstead, Mo., 280 S.W.2d 6, 11, certiorari denied, 351 U.S. 356, 76 S.Ct. 857, 100 L.Ed. 1479. When so construed, the verdict reasonably shows that the jury found appellant guilty of burglary in the second degree, and that it could not agree

on the punishment and so reported as authorized by Instruction No. 9.

In support of his contention that the jury was coerced by Instruction 12 (the so-called "hammer" instruction), appellant argues that after deliberating only three hours and after only two ballots had been taken, the court gave the instruction, and then after only thirty minutes the jury then arrived at a verdict of guilty and "still had time to find itself deadlocked on the question of punishment." He argues that the "more likely explanation" is that as soon as those who doubted guilt had yielded, the panel "simply unanimously (or fairly unanimously) agreed to drop the onus of punishment on the trial court" because it was supper time.

 We note first that this is pure speculation, and second that there could have been no prejudice because the punishment fixed by the trial court was the minimum. But in any event, it is a discretionary matter for the trial judge to determine whether an instruction should be given concerning the desirability of the jury to reach a verdict, and also as to when it should be given. The circumstances here do not demonstrate an abuse of that discretion.

The sixth point is that "The verdict is against the law and evidence, and against the credible consistent evidence in the case." This court does not weigh the evidence, State v. Howard, Mo., 360 S.W.2d 718, but appellant argues, in effect, that a submissible case was not made because the evidence was "only strong enough to arouse a suspicion of guilt." We do not agree. The two police officers testified that the building was broken into, and that each saw appellant in the building. His automobile was found next to the building, and it contained appellant's operator's license and other identifying material. Whether the officers or appellant's witnesses, which included appellant, should be believed was a matter for the jury. Clearly, a submissible case was made.

The final point presenting an issue for appellate review pertains to the admission of evidence.

Police Officer Donald E. Egelhoff testified without objection that when he arrived at the garage he saw a person inside of it, and that the person was appellant. Subsequently, the following occurred:

"Q. Now I ask you one more time, are you positive that that's the man you have described that you saw inside the Hathcox Garage that night?

"Mr. Kranitz: Objection, it's an improper question and it's leading.

"The Court: Objection overruled.

"A. You want me to answer?

"Mr. Kranitz: He is impeaching his own witness.

"The Court: It's overruled.

"A. I am sure that's the man."

 We do not consider that this constituted an attempt to impeach the witness, but assuming that it was leading, it does not call for reversal of the judgment. This was cumulative; the witness had already testified that appellant was the person he saw in the garage. The departure from the correct and usual manner of conducting direct examination, if this was a departure, was of trivial consequence and was not prejudicial. See State v. Sykes, Mo., 372 S.W.2d 24, 27.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.