**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Willie WILLIAMS, Defendant-Appellant.**

**No. 36616.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 16, 1975.

Neal P. Murphy, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

The defendant was convicted by a jury of robbery in the first degree, § 560.120 RSMo 1969, and was sentenced by the court to twenty years imprisonment pursuant to the Second Offender Act, § 556.280 RSMo 1969.

The sufficiency of the evidence is not challenged. The facts can be stated very simply. Defendant was convicted of the robbery of Paul Bolduc, a Religious Brother from Maine, who was in St. Louis for four days in June 1974 to attend a conference. On June 23, 1974, Brother Bolduc went for a walk along Vandeventer Avenue in St. Louis. During his walk he stopped at a phone booth to look up an address in the telephone directory, and while in the phone booth the defendant brushed up against him. Brother Bolduc then told the defendant he would "move along" and the defendant could use the phone. Defendant grabbed for Brother Bolduc's right wrist, but the Brother was able to pull away. Brother Bolduc then started to walk away, but the defendant followed right behind asking for money. Brother Bolduc gave the defendant some change, and then continued walking.

Brother Bolduc then saw the defendant pick up an iron pipe and come towards him. The defendant struck Brother Bolduc across the mouth, lip and cheek with the weapon. Brother Bolduc was then in a state of "fright and shock" and stated to the defendant: "Why did you hit me? I gave you some money." Brother Bolduc then gave the defendant a ten dollar bill. The defendant then told the victim: "I'm going to kill you." The defendant struck Brother Bolduc again, this time across the legs.

The defendant with an iron pipe in his hand was apprehended near the scene of

the robbery. The defendant told the officer: "Yes, I had hit the gentleman in the mouth, but he owed me some money." Defendant further stated that the victim owned a junk yard and that he worked for him.

Defendant's first contention is that the trial court erred in overruling his objections to the testimony of Brother Bolduc concerning the physical injuries received at the time of the robbery. The defendant's attorney objected to the victim relating that he was taken to the hospital where 25 to 30 stitches were taken in his lip and mouth. Defendant claims this testimony was "irrelevant as proof of other crimes (battery) and was calculated to invoke the sympathy of the jury."

We first note that evidence as to the extent or effect of injuries received by the victim of a criminal assault or similar offense of violence (including robbery) has generally been held admissible because such evidence is relevant to an issue in a case involving physical violence. See Annotation, 87 A.L.R.2d 926 (1963), and cases cited therein. Missouri has followed this trend. In a rape case, for example, evidence of the type, extent of injury sustained, and medical treatment received is admissible to show the use of force and the extent of the violence. *State v. Foster*, 490 S.W.2d 662[5] (Mo.App.1973). In assault cases the extent of injury and the physical condition of the victim is admissible to show the nature and character of the assault. *State v. Jackson*, 500 S.W.2d 306, 311[10] (Mo.App.1973).

A material element of the offense of robbery in the first degree is the taking of property from the victim by violence to his person or by putting the victim in fear of some immediate injury to his person. § 560.120 RSMo 1969; *State v. Haislip*, 411 S.W.2d 81 (Mo.1967). Here the evidence was that the victim was in a state of "fright and shock" after being struck in the mouth with an iron pipe by the defendant. It was then that the victim gave money to the defendant. This certainly is relevant to

prove that the robbery was committed by violence and that the victim was put in fear of immediate injury to his person. We further believe that proving the injuries sustained as a result of the violence is the best possible proof of the violence committed on the robbery victim's person. This has been the holding in other jurisdictions. *People v. Heller*, 131 Ill.App.2d 799, 267 N.E.2d 685, 690 (1971); *Levell v. State*, 453 S.W.2d 831 (Tex.Cr.App.1970). *People v. Hopkins*, 29 Ill.2d 260, 194 N.E.2d 213, 216 (1963). We fully agree with the rationale of these decisions.

The victim's testimony concerning the nature and extent of the injuries received during the robbery was properly admitted. Defendant's first contention is rejected.

Defendant's second contention is that the trial court erred in overruling his objection to the state's cross examination of defendant with regard to his prior convictions. Defendant argues that since he brought out information of his prior crimes in a "truthful and accurate manner" on direct examination, the state had no right to introduce his entire criminal record again. Defendant contends the double mention of his crimes was presented to the jury not as an attack on his credibility, but rather "as character evidence to show that since defendant had committed earlier crimes of a similar nature, he probably committed this crime also."

The prosecutor has a statutory right to attack a criminal defendant's credibility by inquiring about his prior convictions when the latter testifies in his own behalf. § 491.050 RSMo 1969; *State v. Lee*, 492 S.W.2d 28[13] (Mo.App.1973). This form of impeachment, however, is limited to matters concerning the nature and number of the prior offenses; the prosecutor may not go into the details of the prior offenses. *State v. Scott*, 459 S.W.2d 321 (Mo.1970).

■ In this case the defendant on direct examination did not disclose all of his prior convictions, nor did he recount his prior offenses in an accurate manner. The prosecutor here was justified in questioning defendant about two prior offenses—a 1956 Illinois robbery conviction and a 1967 Oklahoma conviction for assault—that defendant had not mentioned on direct examination.

The remainder of the prosecutor's cross examination concerning defendant's prior offenses was an attempt to clarify for the jury the defendant's inaccurate and often misleading direct testimony. (1) On direct examination defendant said he had not been convicted of a 1959 Iowa charge, but rather had pleaded guilty. Since the jury might reasonably believe that a guilty plea was not a conviction, the prosecutor attempted to clarify this conviction on cross examination. The defendant admitted the Iowa conviction, then volunteered the information that he had been placed on probation but had violated the probation within 24 hours "for no reason at all." (2) On direct examination defendant admitted a 1965 Oklahoma conviction for "check." The prosecutor later clarified this as a bad check conviction. (3) Defendant admitted a 1967 Louisiana conviction for "burglary, attempted burglary." The prosecutor later had defendant explain that his conviction was not for both burglary and attempted burglary, but rather for attempted burglary alone. (4) Defendant then gave particularly confusing information about a 1971 Louisiana conviction: "I was tried for armed robbery, which it was—the verdict was returned attempted robbery, which I received two and a half years. I appealed it to the Supreme Court, which was overruled and I was released—ordered released by the Supreme Court of the United States." On cross examination defendant said his conviction was for attempted robbery which conviction was overturned by the Supreme Court.

This detailed comparison of the defendant's direct and cross examination shows the prosecutor did not impermissibly delve into the details of the prior convictions. The prosecutor's questions clarified for the jury the defendant's inaccurate and misleading direct testimony. If a prosecutor cannot correct or clarify a criminal defendant's misleading and inaccurate statements about his prior crimes, then the prosecutor's right to impeach him through his prior crimes is a hollow right. We believe the trial court properly overruled defendant's objections to the prosecutor's cross examination of defendant with regard to his prior convictions.

■ The defendant next contends the trial court erred in not giving his offered instruction A–1 (MAI–CR No. 2.50) regarding his character. Defendant claims the prosecutor's "improper" cross examination emphasis on defendant's prior convictions had "the effect of casting improper inferences on defendant's character."

The first "Notes on Use" under MAI–CR No. 2.50 states: "This instruction must be given in all felony cases, whether requested or not, 'whenever necessary,' Rule 26.02(6), which means whenever there is evidence of defendant's general reputation of good character."

The second "Note" under MAI–CR No. 2.50 enumerates what does not constitute an attack on defendant's character: "An attack upon the *credibility* of the defendant as a *witness* by proof of his reputation for truth or veracity or by cross examination or by proof of prior convictions does not constitute evidence putting the defendant's *character* as a *party* in issue." (Emphasis in original).

We believe the prosecutor's review of defendant's prior convictions was a legitimate exercise of his right to show prior convictions for the purpose of attacking defendant's credibility. § 491.050 RSMo 1969; *State v. Lee*, supra. The prosecutor was not attempting to cast improper inferences on defendant's character, and the trial court correctly refused to give defendant's offered instruction.

Defendant's final contention is that the trial court erred in overruling his objection to that part of the state's rebuttal argument wherein the prosecutor commented on defendant's failure to produce certain witnesses. The defendant contends the effect of the prosecutor's remarks was to mistake the burden of proof.

During the state's rebuttal argument the following exchange occurred:

"PROSECUTOR: We have a man who claims he was drinking with three or four other people, yet ladies and gentlemen, there isn't one of those three or four people here.

"DEFENSE COUNSEL: I object to that. He knows full well the burden of proof lies with the State.

"THE COURT: State your objection.

"DEFENSE COUNSEL: It is improper final argument. He is commenting upon the burden of proof which the State of Missouri has.

"THE COURT: Objection overruled. Proceed.

"PROSECUTOR: The defendant is telling you he was out there with three or four other men. Where are those three or four other men? Where is the substantiation to his testimony? . . ."

It was reasonable to conclude that the three or four men with whom defendant said he had been drinking on the day of the crime would have substantiated at least part of his version of the encounter with Brother Bolduc. The prosecutor may comment on the failure of the defendant to call a witness who would be expected to testify favorably to his case. *State v. Jenkins*, 516 S.W.2d 522, 528[19] (Mo.App.1974); *State v. Barron*, 465 S.W.2d 523, 529[8] (Mo.1971). Thus the trial court properly overruled defendant's objection to the prosecutor's remarks.

The judgment is affirmed.

WEIER, P. J., and RENDLEN, J., concur.