STATE of Missouri, Respondent,

v.

Moses MOORE, Appellant.

No. 62414.

Supreme Court of Missouri,
En Banc.

Sept. 8, 1981.

Lee Nation, Kansas City, Clifford A. Cohen, Public Defender, Gary L. Gardner, Kevin Locke, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

HIGGINS, Judge.

A jury convicted Moses Moore of sodomy and rape and fixed his punishment at twenty-five years for each offense. Judgment was rendered accordingly with the sentences to be served concurrently. The Court of Appeals, Western District, affirmed. The case was transferred by this Court to consider further the propriety of the prosecuting attorney's remarks in closing argument concerning defendant's failure to present corroborative witnesses. Affirmed.

Sufficiency of the evidence is not in question. The victim testified that on April 4, 1978, defendant, whom she had known for about nine years, and another person, approached her outside a lounge and asked her for a ride home. When they arrived at defendant's house she checked her tires and found that one was losing air; the spare tire was flat. She noticed the house of a family related to her sister. After telephoning her husband from that house she went to defendant's house to borrow cab fare. Charles Johnson met her on the porch, grabbed her arm, told her he had been "liking her for a long time" (she had known him for several years), hit her in the side of the face when she resisted, and pulled her into the house. He took her to the bedroom where he forced her to perform fellatio and have sexual intercourse with him. Following this, Darrell Smith, also known to the victim, came into the room and made her perform fellatio. The other person with defendant, later identified as Joe Gregory, then came in, expressed shock at what was happening, stated he had no part in it, and left the room. Defendant entered, forced the victim to perform fellatio on him, and then had intercourse with her from behind while he forced her to perform fellatio on Darrell Smith. Defendant continued to have intercourse with her several times that night. Early the next morning, Joe Gregory helped the victim leave. She went to her sister's house, where her mother had spent the night, and they called the police.

Defendant was arrested that day. He was found by the police in the attic of his house.

Defendant testified that he had a party or neighborhood "get-together" the evening of April 4, 1978. He stated that among those at the party were Charles Johnson, Darrell Smith, Joe Gregory and his date, Billy Kidd, Cynthia Smith, and a woman named Faye. The victim drank, smoked marijuana, and danced during the evening. He later saw her go into the bedroom with Charles Johnson. Sometime thereafter he went through the bedroom on his way to the bathroom. The victim was lying naked on the bed and invited him to have sexual intercourse with her. He acknowledged having sexual intercourse with her but denied anything more. He explained his presence in the attic when the police arrested him by claiming he was hiding because of outstanding traffic warrants for not paying a $185.00 fine.

In closing argument the prosecutor made the following statements:

"We had a party." "It was a big party." But where are the guests?

Who came in here and verified the party?

MR. ROGERS: (Defense Counsel) Object to that, Your Honor. The defendant stated the names of those people. They're equally available to the State.

THE COURT: Overruled.

MR. STIGALL: (Prosecutor) He says these people are available to the State. These are the defendant's friends.

MR. ROGERS: (Defense Counsel) I'll object to that, Your Honor. The evidence is that Billy Kidd is related to the alleged victim.

THE COURT: This is argument; overruled.

MR. STIGALL: (Prosecutor) These are his friends. He lives with them, plays with them, has parties with them. Nobody came in here to verify that party, except this defendant.

But then maybe he might think, "Well, you people don't believe the party, but so what do I say then? She consented. That's how she got the sperm inside of her. She consented to this."

Did anybody come in here and verify the consent? Did any of his friends come in here and verify that? No.

\* \* \* \* \* \*

And we don't even know now what happened, because nobody came in here to explain the party.

Now Mr. Rogers will have an opportunity, and I hope he's going to rebut some of this. Maybe he's going to tell you why there wasn't anybody in here to explain

that party, and why there wasn't anybody in here to explain this consent, and then I have closing again. Thank you.

\* \* \* \* \* \*

Why didn't they bring in somebody to tell us about this party, and what happened? Why didn't they bring in Billy, the kid?

MR. ROGERS: (Defense Counsel) I object to that, Your Honor. That witness is peculiarly available to the State, being a relative, by marriage, of the alleged victim.

THE COURT: Overruled.

MR. STIGALL: (Prosecutor) These are his friends. Why didn't he bring in anybody—

MR. ROGERS: (Defense Counsel) May we approach the bench?

MR. STIGALL: (Prosecutor)—to verify this party.

MR. ROGERS: (Defense Counsel) May we approach the bench?

(Counsel approached the bench and the following proceedings were out of the hearing of the jury:)

MR. ROGERS: (Defense Counsel) I object, Your Honor, and move that the jury be instructed to disregard that last comment of counsel for the State on the grounds that the individuals at the party, Charles Johnson, Darrell Smith, defendants in this crime, have a Fifth Amendment right not to testify. Counsel for the State is aware of that right, and further that Joseph Gregory, at the last trial, did advise the Court that he intended to exercise his Fifth Amendment right not to testify. Counsel for the State is therefore commenting upon the rights exercised by these persons of their Fifth Amendment rights, and I ask that the jury be instructed to disregard the comments of counsel.

THE COURT: Overruled, and I might also make this observation. There were other people there, that you've not mentioned now, that were friends of this particular defendant.

MR. ROGERS: (Defense Counsel) There is only one other, Your Honor, and the testimony is that she is currently in California.

THE COURT: There were others as well.

MR. ROGERS: (Defense Counsel) That he didn't even know.

THE COURT: Know then. Overruled. (The following proceedings were in the presence and hearing of the jury:)

MR. STIGALL: (Prosecutor) Where are these people and why didn't they come in here and tell you they were there? Where is this one little girl—and I always lose that photograph—the one on the defendant's steps? Where is she?

MR. ROGERS: (Defense Counsel) I'll object to that, Your Honor. That misstates the evidence. The evidence is that she's currently in California.

THE COURT: I don't think he's misstated any evidence yet. He's just asking where she is. Overruled.

MR. STIGALL: (Prosecutor) Where is this little girl that had known this defendant, lives in the neighborhood, and he doesn't know her last name? Where is she today? Where is Cynthia? Where's Faye?

MR. ROGERS: (Defense Counsel) That is Faye, Your Honor.

MR. STIGALL: (Prosecutor) Okay, where is she then, and where's Billy, the kid? None of them are in here to verify this party. I join with Rogers. I wonder what happened out there too.

Not one of them came in here and backed this defendant up. And he asked you to speculate what happened. I don't want you to speculate.

MR. ROGERS: (Defense Counsel) I object to that as misstating my argument. I told them they couldn't speculate.

THE COURT: The jury will remember what the argument was.

MR. STIGALL: (Prosecutor) This man would have you believe it was all fun and games on the night of April the 4th. The only game out there was which one was first, and the only people having fun was this defendant and the other two.

And this party just goes out the window when there's nobody here to back it up; nobody. And they could have called in these people. They didn't.

MR. ROGERS: (Defense Counsel) I'll object again, Your Honor. They've had the names of all these people. They're available to the State.

THE COURT: Overruled.

MR. STIGALL: These are his people, his friends. And why didn't they bring them in; because they wouldn't back him up, that's why. And you can assume that. That's the law in Missouri.

MR. ROGERS: (Defense Counsel) I'll object to that, Your Honor. That does misstate the law.

THE COURT: Overruled.

MR. STIGALL: (Prosecutor) You can assume that; that if they had have been in here, it would have been contrary to what he said.

But let's forget that for just a second, and let's talk about consent. That's the big issue. Let's talk about that a minute. Who backs him up on consent? No one."

Appellant contends the trial court erred in permitting the prosecutor to argue an adverse inference from defendant's failure to call witnesses in support of his defense of consent.

■ The trial court has considerable discretion in allowing or rejecting argument of counsel, and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. *State v. Wright*, 515 S.W.2d 421, 432 (Mo. banc 1974); *State v. Jewell*, 473 S.W.2d 734, 741 (Mo.1971); *State v. Neal*, 591 S.W.2d 178, 183 (Mo.App. 1979).

■ "It is settled by numerous cases that the prosecuting attorney may comment on the failure of the defendant to call available witnesses who might reasonably be expected to give testimony in his favor." *State v. Beasley*, 353 Mo. 392, 182 S.W.2d 541, 543 (1944). *See also State v. Barron*, 465 S.W.2d 523, 529 (Mo.1971); *State v. Linders*, 299 Mo. 671, 253 S.W. 716, 721 (1923). Such comments are permissible because a logical inference can be drawn from a failure to call these witnesses to testify that their testimony would be damaging rather than favorable.

■ In the present case both defendant and the victim agreed that Johnson, Smith, and Gregory were present the night the victim was raped. Defendant further testified that additional persons were present at his neighborhood "get-together". None of these persons were called at trial to verify that a party had actually occurred. The prosecutor in closing argument noted this and argued that the jury could infer that no one was called to verify the party because their testimony would have been contrary to defendant's.

It was both logical and permissible for the prosecutor to argue this inference. The defendant provided the names of his friends present at his party. Had such a party occurred it can reasonably be expected that someone present would have been called to verify it. By not calling anyone to so testify it is reasonable to infer that there was no party.

Appellant cites *State v. Wright*, 582 S.W.2d 275 (Mo.1979), and *State Wright*, 571 S.W.2d 734 (Mo.App.1978), for the proposition that a prosecutor may not argue an inference adverse to defendant from a witness' refusal to testify. He argues that Johnson and Smith were co-defendants and had a fifth amendment right not to testify and that Gregory had advised the court in a prior trial that he wished to exercise his fifth amendment right not to testify.

There is no support in the record that Smith, Johnson, and Gregory refused to testify at defendant's trial. In any event no specific reference was made to the failure of these witnesses to testify for defendant, and as the trial court correctly noted, there were other people allegedly present at the party who could verify that it had occurred. The unavailability of these three witnesses does not destroy the inference that can logically be deduced from defendant's failure to produce any witness to verify the party or "get-together."

Appellant also cites *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647 (1942), and *State v. Valentine*, 587 S.W.2d 859 (Mo. banc 1979), for the proposition that a party cannot comment on the failure of the other party to call a witness available to both parties. He argues that the witnesses were equally available to the state because he had no "opportunity for knowledge of or control over the witness[es]," or a "community of interest" with them that would make it "reasonably probable that the witness would have been called to the trial to testify for such party except for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable." *State v. Collins, supra*, 165 S.W.2d at 649.

The discussion of availability in *State v. Collins, supra*, is consistent with the justification and logic of the permissible inference—if a witness can be expected to testify favorably to one party, he is "peculiarly available" to that party, and the failure to call that witness gives rise to the inference that his testimony would actually have been unfavorable rather than favorable. *State v. Collins, supra*, refers to conditions that would reasonably give rise to that inference.

Defendant's testimony was that the prosecuting witness was but one of a number of his friends at a party at his house and that she was a consenting and willing participant in the activities of the party. He gave the names of such friends. His relationship with them, the information he attributed to them, and their community of interest with him were such that defendant's friends were more available to him than to the state, and the defendant would naturally have been expected to call one or more of them to testify. *State v. Wilkerson*, 559 S.W.2d 228, 229 (Mo.App.1977). *See also State v. Karnes*, 608 S.W.2d 455 (Mo.App. 1981); *State v. Williams*, 532 S.W.2d 826 (Mo.App.1975).

The trial court did not abuse its discretion in its rulings on the state's closing argument.

Appellant also contends the trial court erred in overruling objections to the prosecuting attorney's argument that defendant had failed to produce documentary evidence of any traffic warrants extant at the time of his arrest to support his excuse for hiding in the attic. He argues that no adverse inference can be drawn from his failure to produce documentary evidence. This Court adopts the substance of the opinion of Clark, J., in denying this contention.

The state was aware by its discovery that defendant claimed to be in hiding to avoid arrest for traffic charges. As part of its case, the state produced evidence that no traffic warrants were outstanding for him at the date he was arrested. Defendant claimed that there were such warrants but the only evidence he offered to confirm his statement consisted of a letter he had written inquiring about the warrants and an envelope in which his letter, with notations, had been returned to him from the municipal court. The dates of each were more than three months subsequent to Moore's arrest on the subject charge.

The state's argument, of which appellant complains, drew the jury's attention to a factual issue raised by the evidence and not to an inference that absent evidence was not produced by defendant because unfavorable. While the prosecutor did argue that if there had been outstanding warrants for defendant when he was arrested, they would appear on municipal court records which could be introduced in evidence by defendant, the thrust of the argument was that no such record existed and that the state's evidence on the question was accurate. The argument was an appropriate comment on the evidence.

Appellant finally contends that because the prosecutor first objected and then agreed to introduction in evidence of the letter and envelope, the state should be held to have stipulated to his proof on the question of the warrants. The record does not support this contention. Objection was originally made to the letter and envelope on the grounds they were hearsay and were not competent to prove existence of out-

standing warrants. Withdrawal of the objection was in no sense a stipulation as to any fact, but removed an obstacle to introduction of the exhibits for whatever value they had. The dates were not persuasive as to the status of warrants three months earlier and the jury so found by its verdict.

The judgment and sentence are affirmed.

DONNELLY, C. J., and RENDLEN, WELLIVER and MORGAN, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, Judge, dissenting.

I respectfully dissent. My reason is that the principal opinion, in deciding when one party can argue an adverse inference from the failure of the opposing party to call certain witnesses, does not apply the well established "equally available" test and, instead, applies a theory which I do not believe is workable or justified. Under the principal opinion, a witness is "peculiarly available" if he is in a position to support the proposition advanced by a party: "if a witness can be expected to testify favorably to one party, he is 'peculiarly available' to that party." This broad statement leads to the self-contradictory result of a witness being "peculiarly available" to both parties at the same time.

To illustrate, suppose the fact in issue was whether a defendant displayed a gun. X, a witness, was in a position to observe the defendant's actions. X is "peculiarly available" to both sides, because he is in a position to support the defendant's claim that he did not display a gun, if that was the fact, or the state's position that the defendant did display a gun, if that was the fact (the same could be said, for example, of Cynthia Smith in the case before us with respect to whether there was or was not a party). Suppose that X is not called as a witness by either side. Who gets to argue the adverse inference? The witness is "peculiarly available" to both sides at the same time and the principal opinion's test becomes completely unmanageable as to who can argue the adverse inference.

The principal opinion concludes that it was both logical and permissible for the prosecutor to argue that defendant's failure to call those people who he said were at the neighborhood "get-together" created an inference that their testimony would be damaging to the defendant rather than favorable. One is left to wonder, however, why the witnesses, assumed by the prosecutor to be damaging to defendant (and therefore helpful to the state), were not called by the prosecutor. On one hand, the prosecutor is really arguing that the witnesses not called would help the state. On the other hand, he has failed to call them himself.

The principal opinion finds the discussion of availability in *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 649 (1942) consistent with its reasoning. I cannot agree. *Collins* lists three situations in which a witness may be said to be "peculiarly available" to one party: "when, because of [1] such party's opportunity for knowledge of or control over the witness, or [2] the community of interest between the two, or [3] the prior statements and declarations of the witness," make it reasonably probable that the witness would have been called except that the party knew or feared that the testimony would be damaging.

Apparently, the principal opinion found that there was a "community of interest" between defendant and the people he did not call as witnesses such as to make those potential witnesses "more available" to defendant. However, "[t]he question of whether a witness is 'available' to one or the other of the contending parties depends upon such matters as ... the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation." *Collins, supra* at 649; *State v. Valentine*, 587 S.W.2d 859, 864 (Mo. banc 1979).

In *State v. Valentine, supra* at 864, this court found that a woman (Pat), who was not called to testify for defendant was not

"anything more than a social acquaintance.... Nor was she a 'peculiarly available' witness under *Collins*.... There [was] no evidence of a 'community of interest' or a relationship borne by Pat to appellant such as would be expected to affect Pat's personal interest in the outcome of the trial."

I think the same conclusion is warranted here with respect to the people not called by defendant.

It is interesting, as well, to look at cases in which the *defendant* was prevented from arguing the state's failure to call a witness. In both *State v. Ganaway*, 556 S.W.2d 67 (Mo.App.1977) and *State v. Benson*, 574 S.W.2d 440 (Mo.App.1978), the court of appeals upheld the trial court's issuance of a protective order preventing defense counsel from remarking on the state's failure to call a police officer as a witness. The *Ganaway* court, cited with approval in *Benson*, declared:

"Discovery procedures have changed the concept of a lawsuit from a 'sporting contest' to a 'search for truth.' An inference of unfavorability has a valid function only to the extent it constitutes a reasonable inference. If, in fact, it is known or is readily discoverable, that the testimony of the witness would be favorable to one side *it does not serve justice to presume the contrary.* There are circumstances where the inference is permissible, but the original reasons for the rule have been largely eliminated by the availability of discovery to both sides.... *The inference is not, after all, a substitute for trial preparation or the truth.*"

556 S.W.2d at 70 (emphasis added).

The court concluded by finding that, "Under the circumstances [the arresting officer] was no more available to the State than to defendant and there is nothing in the record upon which to conclude his testimony would have been unfavorable to the State."

I agree with the above reasoning and I fail to see why it was not applied to the facts here. Can it be contended from the evidence in the record that Cynthia Smith had a relationship to defendant which gave her a personal interest in the outcome of the trial? What is there in the record about Cynthia Smith which automatically allies her with defendant or pits her against the prosecution? I cannot see why she was "peculiarly available" to defendant when the arresting officer in *Ganaway* was not as to the state. The defendant in a criminal case should at least be accorded the same test of availability as the state was in *Ganaway* and *Benson*. Perhaps an even more favorable one. The question arises: Should an inference be permissible against a party who is presumed to be innocent until *proven* guilty beyond a reasonable doubt, who may remain silent, and who need present no case at all. As a New York appellate court observed:

"[I]t is at least doubtful, that as between a defendant in a criminal case, presumed to be innocent and required to call no witness, and the People, who have the burden of proof beyond a reasonable doubt, the rule of equal availability of witnesses to the commission of a crime has any sensible application."

*People v. Moore*, 17 App.Div.2d 57, 230 N.Y. S.2d 880, 884, *cert. den.* 371 U.S. 838, 83 S.Ct. 64, 9 L.Ed.2d 74 (1962).

Finally, I would add that there are other reasons that witnesses are not called other than that the substance of their testimony would be unfavorable. They may not be available, as was contended to be the case with Faye, who defendant testified was in California. They may, for whatever reason, plead the fifth amendment, as did Joe Gregory (in a prior trial of defendant) although Gregory was not charged with any crime and, according to the alleged victim, aided her. They may not be desirable witnesses because of their appearance or demeanor, or because they have a criminal record which would tend to impeach their credibility. And yet the principal opinion would let the non-production of a witness be used by the state as a positive inference against defendant, although the state had also refused to call the witness despite whatever information could be had through

discovery. Such an inference against the defendant gives the prosecutor a license to invite the jury to speculate as to evidence not before it. This is never permissible. I would reverse and remand for a new trial.

BARDGETT, Judge, dissenting.

I respectfully dissent and concur in the dissenting opinion of Seiler, J., and file this opinion because of additional matters I believe bear on the problem.

There is nothing in this record to indicate that the prosecutor regarded the other people at defendant's house to be "peculiarly available" to defendant or that he intended to tell the jury that defendant's failure to call them as witnesses meant they would deny that there was a party, if called. The first time the matter appears is during closing argument—after all the evidence is in. There is no relationship between those persons and the defendant from which one might think the defendant had control over them or which might indicate a basis for adverse comment. There was, therefore, no opportunity for the defendant to produce any evidence as to why he wouldn't or couldn't call them as witnesses and, consequently, any argument as to why they were not called would be objectionable as beyond the scope of the evidence.

As sometimes happens during argument in a case, the defense attorney, after objecting, told the court that two of the witnesses, Johnson and Smith, had also been charged and Gregory had refused to testify in an earlier trial on self-incrimination grounds. The prosecutor did not dispute this statement, and the state in its brief admits Johnson and Smith had been charged with the same crime—rape—at defendant's house that same night. When this kind of information comes to the court, as it did here, it is ordinarily accepted as true if the other side does not take exception to it. A circuit judge would, in some instances, ask the other attorney—prosecuting attorney—if the statement were correct and expect a truthful answer. In this case it seems clear to me that the judge and the prosecutor knew that what the defense at-

torney said was true—that two of the people, Johnson and Smith, were also charged and Gregory had refused to testify on self-incrimination grounds. Johnson had been tried and convicted in August 1978, some seven months before the instant trial. That conviction was reversed and remanded for a new trial in March 1980. *State v. Johnson*, 595 S.W.2d 774 (Mo.App.1980).

Although it is correct to say that there was no evidence in this trial that Johnson, Smith, and Gregory refused to testify at *this* trial, it is equally true that the record here does demonstrate that two, Johnson and Smith, had been charged and Gregory had refused to testify at an earlier trial of this defendant. That is certainly sufficient to demonstrate that none of them was about to testify in this trial whether called by the state or the defense.

Nor is there any basis for assuming there is a "community of interest" between Johnson, Smith, Gregory and the defendant. The interest of individual defendants in criminal cases such as this is to avoid conviction and that is individual—not communal—in nature. We do not know what the evidence in *State v. Johnson, supra*, was outside of that which is reported in the opinion, but it is apparent this defendant did not testify in that case. Query: When Johnson is retried, will the state be allowed to argue an unfavorable inference against him if this defendant is not called in from the penitentiary to testify as a defense witness? If called, the prosecution could cross-examine as to his conviction in this case, which, when viewed by a jury in the context of the whole case obviously will operate against Johnson but cannot be legally considered as evidence of Johnson's guilt. The point is that it is simply unreasonable and unrealistic to premise an adverse inference from a defendant's failure to call another defendant as a witness or one who has already refused to testify on self-incrimination grounds.

The availability of an adverse inference for a party's failure to call a particular witness or group of witnesses ought to be reserved for exceptional situations where

justice simply requires it. In my opinion we ought not to so expand the adverse inference use so as to make it more expedient to *not* call a witness, so as to use the adverse comment, than to call the witness before the jury so the jury would know what his testimony actually is instead of guessing, by inference, what it might be. And where, as here, the obvious probability is that the three men would not testify at all, it seems to me to be essentially unfair to permit the adverse inference, because *neither party* really had the power to get their testimony before the jury.

The broadening of the inference rule as permitted by the principal opinion permits an adverse inference to go against the defendant for failure to call specific witnesses as to a specific item (party or no party) even though judges and lawyers all know *the defendant could not realistically call any of the three men as witnesses anyway.* This, I view as a penalty for failure to do something—call certain witnesses—that the law does not require a defendant in a criminal case to do. The defendant is simply not required to prove his innocence.

Given the above-stated situation, no judge would expect the state or the defendant to call Johnson or Smith as witnesses because, being charged, and Johnson having been convicted with his case on appeal would, most assuredly, refuse to testify on self-incrimination grounds. These two witnesses were, therefore, equally *unavailable* to the parties. Gregory, having earlier refused, was also equally unavailable. The women were, in my opinion, equally available.

This is a classic case for rebuttal evidence. The prosecutrix said there was no party and the other women were not there. Defendant says there was a party and the other women were there. If the state is correct and the witnesses would say there was no party, then why didn't the state call them in rebuttal? At least the case could have been decided on evidence that was admitted rather than on evidence that was not admitted—the inference.

Additionally, I believe the defendant's constitutional rights under both the Missouri and United States constitutions to "confront his accusers face to face" and to cross-examine witnesses have been denied. This happens because the prosecutor is allowed to tell the jury they can decide whether or not there was a party on the adverse inference basis and the inference becomes evidence for the state but the defendant was not afforded the opportunity to cross examine its source—the absent witnesses.

In my opinion our *system* of justice loses credibility and becomes more prone to error when important aspects of criminal cases are decided by playing the inference game instead of calling the witness who, according to the inference concept, would testify to facts favorable to the state.

I dissent.