STATE of Missouri, Respondent,

v.

James GRIFFITH, Appellant.

No. 49326.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 16, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 16, 1985.

Application to Transfer Denied
Oct. 16, 1985.

### ORDER

Debra Buie Arnold, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., William M. Webster, Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant was convicted of second degree murder by a jury. Section 565.004, RSMo 1978. He was sentenced as a persistent offender to twenty years imprisonment. Defendant appeals. We affirm.

The sufficiency of the evidence is not challenged. The state's evidence revealed that on October 15, 1983, around 9:30 p.m., defendant and a friend named Allen Keith Adams went to a night club located on Gravois Road in the City of St. Louis. At 1:30 a.m., after drinking for several hours, they went to a nearby pool hall. Defendant was boisterous and belligerent in the pool hall. Shortly after defendant lost a wager on a pool game, he and Adams left. As they crossed the street to get to defendant's car, defendant shouted obscenities at the oncoming traffic. Robert Krenning was walking his dog along the sidewalk near defendant's car.[1] The state's evidence further revealed that defendant shouted something at Krenning and the two men began arguing. Defendant had a ballpeen hammerhead attached to his key chain, which he started twirling. Krenning backed up. Defendant swung at Krenning, who avoided the punch. Krenning hit defendant several times with his fists, knocking him down to his knees, then kicked him. Krenning retreated ten or fifteen feet toward the corner. At this point defendant reached into his left boot, raised his arm in Krenning's direction, and a gunshot was heard. Krenning died from a .25 caliber bullet wound to his heart.

Defendant's testimony differed from the state's witnesses' regarding the events subsequent to his crossing the street. Defendant testified that Krenning began the unfriendly exchange of words and threatened defendant. Defendant denied swinging the ballpeen hammerhead or attempting to strike Krenning. He admitted, however, that he pushed Krenning before Krenning hit him. Defendant claimed that after Krenning knocked him down, he saw Krenning aim a gun at him and step toward him. He reached up, grabbed Krenning's hand, and turned the gun toward Krenning as he pulled himself up. The gun discharged. Defendant ran to his car, carrying the gun with him. He unlocked the door for Keith Adams, who was already back at the car, and drove away. At Adams' urging, he threw the gun out the window and they returned to defendant's home. There they transferred into Adams' car and drove out to Adams' home in St. Charles.

Defendant's sole point on appeal is that the trial court erred in permitting the prosecutor to argue an adverse inference from defendant's failure to call Keith Adams as a witness. Defendant contends that he objected to the argument at the first possible opportunity. We agree that he objected, but not for the reason asserted on appeal.[2] However, we find no error, plain or otherwise.

1. Krenning was 20 years old and weighed about 175 pounds; defendant was 38 and weighed about 380 pounds.

2. The exchange at issue in this appeal began as follows:

[Prosecutor]: All right. What else do we have? ... One other thing. Who was closest to this event? Who was there from the time it started until the time it ended? Who knew everything and who saw everything? Who was the defendant's friend? This mysterious Keith Adams. Mr. Adams who went drinking with this man, was in the pool hall, who was in the car; who walked over with him to the car. Who could tell you everything that happened, and who could back up everything he says. (Bench Conference)

[Defense Counsel]: Your Honor, I would object to [the prosecutor] making any reference to Keith Adams in his rebuttal half. It wasn't brought up in my argument in any way and for him to bring it up at this point in time doesn't give me a chance to argue otherwise.

[Prosecutor]: Judge, he mentioned in his case the testimony of the defendant and I have a right to respond to that evidence as part of my rebuttal. It is rebuttal.

THE COURT: Objection overruled.

Our Supreme Court recently faced this issue in *State v. Moore*, 620 S.W.2d 370 (Mo. banc 1981). In holding that the prosecutor's argument was permissible, the Court said:

> The trial court has considerable discretion in allowing or rejecting argument of counsel, and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted.
>
> It is settled by numerous cases that the prosecuting attorney may comment on the failure of the defendant to call available witnesses who might reasonably be expected to give testimony in his favor. Such comments are permissible because a logical inference can be drawn from a failure to call these witnesses to testify that their testimony would be damaging rather than favorable. (citations omitted).

*Id.* at 373.

■ The adverse inference argument is not permitted, however, if the witness is equally available to both parties. As was noted in *Moore*, "... if a witness can be expected to testify favorably to one party, he is 'peculiarly available' to that party ..." and thus not equally available. *Id.* at 374.

■ We now examine the record to determine if the trial court abused its discretion. A substitute information in lieu of indictment was filed on January 16, 1984. On July 31, 1984, the defendant endorsed Keith Adams as a witness. Trial was set for August 13, 1984. On August 18, 1984, defendant filed a verified motion for continuance which alleged that Adams had suffered a broken leg and foot and could not testify until September. The defendant called Adams' testimony "essential". The

court granted a continuance until September 10, 1984, and the trial proceeded on that date. At trial, Adams was first mentioned when defense counsel cross-examined Kelly Diaz. Defense counsel asked:

Q. Did you ever see anyone else with James during this whole incident?

A. Yes, I did.

Q. Did you know who that was?

A. I seen him—I don't know him personally.

Q. Okay. If I said the name Keith Adams—Allen, would that ring a bell with you? [sic]

At the conclusion of the state's evidence, defense counsel made his opening statement in which he again referred to "a friend of [defendant's], Keith Adams." On direct examination defendant testified that he had known Adams for six years and gave his version of the events of October 16, 1983, frequently mentioning Keith Adams.

We conclude that the state's argument was proper. It was the defendant who brought Adams into the case characterizing him as an essential witness and created a strong impression that Adams would corroborate defendant's version of the facts. Defendant's testimony revealed his six year friendship with Adams and that it was Adams who drove defendant from the scene and advised defendant to "get rid" of the gun. We have concluded that in these circumstances, an adverse inference from defendant's failure to call Adams was proper.[3]

The judgment is affirmed.

DOWD, P.J., and CRANDALL, J., concur.

* * * * * *

3. Defendant places great emphasis on *State v. Collins*, 350 Mo. 291, 165 S.W.2d 646, 649 (1942) which held that a witness is peculiarly available to one party when that party has control over or greater knowledge of the witness, a community of interest with the witness, or favorable prior statements of the witness. Only one of those factors might possibly benefit defendant. Attached to defendant's motion for a new trial was a statement Adams made to the police. This statement was not mentioned in connection with defendant's objection at trial or otherwise brought to the court's attention prior to the motion for new trial. In spite of the statement, though, defendant throughout the entire course of these proceedings created the impression that Adams would testify favorably for defendant. Defendant's reliance on *Collins* is therefore misplaced because it ignores the manner in which

defendant treated Adams throughout the course of the trial.