**STATE of Missouri Plaintiff-Respondent,**

v.

**Roman HEMPHILL, Defendant-Appellant.**

**No. 50811.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 21, 1986.

Motion for Rehearing and/or Transfer Denied Nov. 25, 1986.

Application to Transfer Denied Jan. 13, 1987.

Henry Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Appellant, Roman Hemphill, was convicted by a jury in the Circuit Court of the City of St. Louis of three counts of murder in the first degree, § 565.020,[1] involving the deaths of Lawrence "Spooky" Williams, Ronnie Brown, and William "Cowboy" Phillips, one count of assault in the first degree, § 565.050, involving the shooting of Donnie Brown, and one count of assault in the second degree, § 565.060, involving the shooting of Anthony Bingham. The trial court found that appellant was a prior and persistent offender, pursuant to the provisions of § 558.016, and therefore sentencing on all five counts was by the court. Appellant was sentenced to life imprisonment without eligibility for parole on each of the three counts of murder in the first degree. He also received concurrent terms of life imprisonment on the assault first count and fifteen years on the assault sec-

ond count. The sentences are to be served in the Missouri Department of Corrections. We affirm.

All five of the victims were shot inside the Turning Point Lounge, a tavern, on North Jefferson in the City of St. Louis, sometime around 1:00 a.m. on January 5, 1984. The shots were fired from a .45 caliber handgun by a man standing near the front door of the tavern. The three dead men, Williams, Ronnie Brown and Phillips, were each shot in the chest. Donnie Brown was shot in the back and is now confined to a wheelchair. Anthony Bingham was struck in the left foot. Donnie Brown identified appellant as the shooter.

Appellant was arrested on January 8, 1985 and he voluntarily made a tape recorded statement at that time. That statement revealed that appellant was walking past the tavern around 1:00 a.m. when a woman, whom he refused to identify, told him that there were men inside holding guns on his cousin, Andrew Hemphill. Appellant stated that he then heard a shot or two. At that point he opened the door of the lounge and saw his cousin and Ronnie Brown wrestling, while his uncle, Andrew "Bay Bay" Hemphill protested that they were unarmed. At that point an unidentified "friend" allegedly handed appellant a gun, he claimed that Ronnie Brown, Williams, and Phillips then pulled guns on him and he was forced to shoot them to protect himself and his family, i.e. his cousin and uncle. He denied shooting Donnie Brown or Anthony Bingham.

Appellant claimed that after the shooting, he returned the gun to his friend and he was unaware of what happened to it after that. The gun was never recovered. Appellant did not testify, but the tape of his statement to police was played for the jury and the jurors were given a transcript of the statement.

There was testimony by Emma King, a customer, and Patricia Butler, the barmaid, that a few minutes before the shooting began Ronnie Brown had been struggling

1. All statutory references are to RSMo Cum. Supp.1984 unless otherwise noted.

with Andrew Hemphill. Anthony Bingham testified that a few minutes before the shooting, he'd seen a fight and one of the men involved had a gun. Patricia Butler, stated that Donnie Brown had a gun that night and had had it out shortly before the shooting started. No guns were found on the bodies of either Ronnie Brown or Lawrence "Spooky" Williams, or on Donnie Brown or Anthony Bingham. However, police did find a two-shot .357 derringer on the body of William "Cowboy" Phillips.

The sufficiency of the evidence to sustain the convictions is not contested here. Appellant does however contend that the trial court erred in two respects. First, he contends that the trial court erred in allowing the state to "impeach," Patricia Butler, one of its own witnesses, by having Police Officer Stanley Mierzejewski testify that Butler had told him, during the initial investigation, that Ronnie Brown had said to someone just before the shooting began, "Oh you M____ F____, you got a gun." On the stand, Butler had stated that she couldn't remember Ronnie making any statement about a gun. Appellant also argues in his brief that it was error for the trial court to have allowed the prosecutor to argue the probative value of the prior statement in closing argument. However, since that issue was not included in appellant's motion for a new trial it was not preserved, and will not be addressed here. See Rule 29.11(d); State v. Rojano, 519 S.W.2d 42, 43 (Mo.App.1975). Secondly, appellant argues that the trial court erred in allowing the prosecutor, over his objection, to argue that an adverse inference should be drawn from appellant's failure to call either his cousin Andrew Hemphill or his uncle, Andrew "Bay Bay" Hemphill. We address appellant's points in order.

Patricia Butler was the State's witness and the rule in Missouri has long been that a party is not allowed to impeach a witness called by it, unless the witness's testimony both surprises the party and in effect makes the witness a witness for the other side. State v. Byrd, 676 S.W.2d 494, 502 (Mo. banc 1984). This rule no longer applies in civil cases, because of the Supreme Court's recent holding that there is no valid reason for its continued existence. See Rowe v. Farmer's Insurance, Inc., 699 S.W.2d 423, 424 (Mo. banc 1984). Its rationale would seem to be equally true in criminal cases. As the court stated in Rowe:

Parties no longer freely pick their witnesses.... Today, parties are forced to take their witnesses as they find them. Since parties may not know their witnesses or be familiar with their honesty or credibility, it seems foolish to talk about a party guaranteeing the credibility of his witnesses.

Id. However, this court is not empowered to overturn Supreme Court precedent. Therefore, while we await the Supreme Court's ruling on this issue, we are constrained to continue to apply the rule.

In the case at bar, however, the testimony objected to by appellant was simply not impeachment. "Impeachment occurs when a witness, while testifying, makes a statement inconsistent with a prior extra-judicial statement and the attorney reveals the inconsistency to undermine the witness' credibility." State v. Spinks, 629 S.W.2d 499, 502–503 (Mo.App.1981). That was not what occurred here. Butler's testimony at trial, eight months after the shootings, was simply that she did not at that time recall Ronnie Brown saying something about a gun. She did not testify that Ronnie Brown had not made the statement or that she had not told Officer Mierzejewski that he had made the statement. Thus there was no inconsistency that could have been used to undermine Butler's credibility. There is also no indication that the prosecutor asked the officer "what she [Butler] said Ronnie Brown said" in an attempt to imply an inconsistency or tear down Butler's credibility. The indication from closing argument is that the prosecutor elicited the statement as substantive evidence implying that Ronnie Brown, himself, was not armed. Used for this purpose, the statement was hearsay. However, no hearsay objection was made. "[A] trial court will not be convicted of reversible error for

admitting inadmissible evidence, even though objected to during trial, if the trial objection ... fails to contain the proper ground for its exclusion." *Bly v. Skaggs Drug Centers, Inc.,* 562 S.W.2d 723, 726 (Mo.App.1978). Appellant's first point is thus meritless.

■ As to appellant's second argument, "[w]hen the prosecutor stays within the evidence and its reasonable inferences, his argument is permissible." *State v. Armbruster,* 641 S.W.2d 763, 766 (Mo.1982). *See also, State v. McDonald,* 661, S.W.2d 497, 506 (Mo. banc 1983). No adverse inference can be drawn from a party's failure to call a party "equally available" to both sides. *State v. Griffith,* 697 S.W.2d 258, 260 (Mo.App.1985). However, "equally available" means more than simply being subject to subpoena by either party. *State v. Karnes,* 608 S.W.2d 455, 457 (Mo.App. 1980).

■ When a jury is made aware of a witness who from the facts and circumstances could "be expected to testify favorably to one party, he is peculiarly available to that party and the failure to call that witness gives rise to the inference that his testimony would actually have been unfavorable rather than favorable." *State v. Moore,* 620 S.W.2d 370, 374 (Mo. banc 1981). *See, State v. Ferguson,* 651 S.W.2d 521, 523 (Mo.App.1983); *State v. Karnes,* 608 S.W.2d 455, 457 (Mo.App.1980); and *State v. Ganaway,* 556 S.W.2d 67, 69 (Mo. App.1977). The trial court has broad discretion in determining whether the facts warrant the invocation of this inference "and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted." *State v. Webster,* 659 S.W.2d 286, 288 (Mo.App.1983), citing *Moore, supra.*

■ In the case at bar, if appellant's defense of justification was to be believed, it would be presumed that both his cousin Andrew Hemphill and his uncle Andrew "Bay Bay" Hemphill would have testified for him. He supposedly entered the tavern with a gun to protect them as they were

members of his own family. The trial court did not abuse its discretion by allowing the prosecutor to invoke the inference in this case.

The judgment is affirmed.

CRANDALL and KAROHL, JJ., concur.