**STATE of Missouri, Respondent,**

v.

**Kenneth Dale JOHNSON, Appellant.**

**No. KCD 27573.**

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer
Denied Nov. 3, 1975.

Thomas M. Larson, Public Defender, James W. Fletcher, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Kenneth Dale Johnson, with prior conviction for robbery, first degree, was charged with robbery, first degree, by means of a dangerous and deadly weapon. He was convicted by a jury of robbery, first degree, and the court assessed his punishment at eight years' imprisonment. Sentence and judgment were rendered accordingly. §§ 556.280, 560.120, 560.135, RSMo 1969, V.A.M.S.

The defense was alibi; appellant does not question the sufficiency of evidence to sustain his conviction. The evidence would permit the jury to find: that on September 19, 1973, at approximately 9:00 p. m., Frank Buccola parked his automobile in a lighted parking lot behind his residence at 4424 Pennsylvania, Kansas City, Jackson County, Missouri; that a man, later identified as defendant Kenneth Dale Johnson, engaged Mr. Buccola in conversation in which defendant represented he was looking for a Mr. Widmeyer; that Mr. Buccola turned to lock his automobile and was "rushed" by defendant and another man; that defendant threatened to kill Mr. Buccola, and he felt that a gun had been placed behind his neck; that Mr. Buccola was stripped of his wallet containing $150, his jewelry, watch, keys, and credit cards, after which his assailants again threatened to kill him and left running.

Appellant charges the court erred (I) in overruling defendant's objection after the prosecuting attorney commented, in

closing argument, "that appellant had failed to produce people who were potential 'alibi' witnesses."

Defendant's evidence was calculated to show that he had been in Louisville, Kentucky, on the 18th and 19th days of September, 1973, and that he did not return to Kansas City, Missouri, until approximately 6:00 a. m., September 20, 1973. Depositions of Harry W. Looney and Jacob W. Schmidt, employees of Cooke Pontiac Company, Louisville, Kentucky, were that on September 19, 1973, repair work was done for a person representing himself to be Kenneth Dale Johnson of Kansas City, Missouri, on a Pontiac automobile registered in the name of Kenneth Dale Johnson; that the car came in for repair at about 10:30 a. m., September 19, 1973, and the work was completed at about 12:40 p. m. Also by deposition was the testimony of Ethel Noon, an employee of Rodeway Inn, Louisville, Kentucky, that records of Rodeway Inn showed a room registered in the name of Kenneth Dale Johnson September 18, 1973, for check-out September 19, 1973. Testimony from a long-time friend, Mary Davis, was that on September 18, 1973, she accompanied defendant, Lonnie Watson, and Reginald Cummings to Louisville, Kentucky, where they stayed at Rodeway Inn, and returned to Kansas City at 4:00 or 5:00 a. m., September 20, 1973.

In his own behalf, defendant testified in corroboration of the foregoing. Upon cross-examination, he identified Alice Jackson, who was seated in the courtroom, as the mother of his children, and stated that they were living together at 44th and Montgall, Kansas City, Missouri, with his mother, Geraldine Johnson, and stepfather, Mr. Scott, at the time of the incidents in question.

The argument in question follows:

" * * * you have heard the best interpretation the defense can give you. Best is not good enough to go with the facts. The facts show at best, with all these documents, there was a car in the morning of September 19th, 1973, in another city. Didn't show the defendant. And even if they did, they would only show him there in the morning because each and every matter contained in the depositions themselves tell you the car was ready at twelve thirty. Came direct and if we look at availability, according to the defense's own witnesses, let them pick the car up at one o'clock. They have still got time to be in Kansas City at the time of the crime and that's the crux of it. Was he here, or was he there? There is nothing and I submit to show him not being in Kansas City at nine p. m. What he has done, the defendant has stated they came home sometime early. The defendant stated he lived with Alice Jackson, seated in the courtroom, but we didn't hear that evidence, did we? Ask yourselves why because if they lived together, I submit, certainly, she would know what time they arrived home.

"MR. BUNCH [for defendant]: I object. Mrs. Jackson is equally available to the state. They could call her.

"THE COURT: Proceed.

"MR. BRESSEL: Got further people we could have heard from, I submit. How about—

"MR. BUNCH: Same objection, your Honor.

"THE COURT: Objection overruled.

"MR. BRESSEL: How about Mary Davis's mother? How about the defendant's mother? How about the defendant's step father? Where are all these people who can say they were sure there but they came back here the next day? They are not here, are they? I submit there is a reason for that."

In support of his contention, appellant cites *State v. Houston*, 451 S.W.2d 37 (Mo. 1970), and *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 648–649 (1942), to argue that the court's ruling permitted the State to violate the rule "that it is improper to argue" defendant's "failure to call a witness in his behalf where the witness was equally available to both parties."

The difficulty with appellant's argument is not in the rule but in its lack of application to the argument in question.

"Available," within the sense of the rule, " 'does not mean merely available or accessible for the service of a subpoena, since any witness who can be found may be subpoenaed at the instance of either party to a cause. To the contrary, * * * whether a witness is "available" to one or the other of the contending parties depends upon such matters as the one party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case, and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of the one party and against the other. In other words, a witness may be said to have been peculiarly "available" to one party to an action, so that upon that party's failure to have produced him in court an inference will arise that his testimony would have been unfavorable, when, because of such party's opportunity for knowledge of or control over the witness, or the community of interest between the two, or the prior statements and declarations of the witness, it would be reasonably probable that the witness would have been called to the trial to testify for such party except for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable.' " *State v. Collins,* supra, 165 S.W.2d l.c. 648–649.

Defendant's mother, stepfather, the woman with whom he lived and who was the mother of his children, and the mother of the friend who accompanied him to Louisville, if so, were not "equally" available to the State under the rule of *State v. Collins,* supra.

By way of distinction, the person whom the prosecuting attorney argued to be equally available and that the defendant should have called in *State v. Collins,* supra, "was the person who put in motion the machinery that caused the arrest of the appellant. * * * his position was similar to that of a prosecuting witness," *State v. Collins,* supra, l.c. 649.

Supportive of the court's ruling in this case is the rule that the prosecuting attorney may comment on the failure of defendant to call witnesses who would be expected to give testimony favorable to his case. *State v. Barron,* 465 S.W. 523, 529[8] (Mo.1971); *State v. Beasley,* 353 Mo. 392, 182 S.W.2d 541, 544 (Mo.1944).

Appellant charges the court erred (II) in permitting the prosecuting attorney to ask defendant on cross-examination with reference to the part of Mary Davis in his alibi, "You never told the police about it, did you?"

Appellant's concession "that no objection was made to either the question or the answer and that the admission of this question and answer was not cited as error in Appellant's Motion for New Trial" demonstrates that the alleged error has not been preserved for review as required by Rule 27.20, V.A.M.R. Nor is the incident a matter of plain error under Rule 27.20(c), V.A.M.R. The defense was alibi, and the question to defendant sought the inference that it was fabricated. The merits of the alibi defense was for the jury, and this question of defendant does not appear to have had any decisive effect on the jury to the extent that any manifest injustice or miscarriage of justice resulted. See *State v. Elmore,* 467 S.W.2d 915, 917–918 (Mo. 1971).

Judgment affirmed.

All concur.