STATE of Missouri, Respondent,

v.

Siegfried NEIL, Appellant.

No. 76057.

Supreme Court of Missouri,
en banc.

Jan. 25, 1994.
Rehearing Denied Feb. 22, 1994.

Bradley S. Dede, James J. Knappenberger, William G. Jurgiel, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

LIMBAUGH, Judge.

Defendant, Siegfried Neil, appeals from the judgment of convictions, entered pursuant to a jury verdict, on two counts of robbery in the first degree and two counts of armed criminal action. He was sentenced to four terms of imprisonment totaling 28 years. After appeal to the Court of Appeals, Eastern District, this Court granted transfer to readdress the propriety of evidence of uncharged crimes. The judgment is affirmed.[1]

Defendant does not challenge the sufficiency of the evidence. The record shows that

---

1. This opinion borrows freely from Judge William H. Crandall's court of appeals opinion.

defendant was employed at three different Kentucky Fried Chicken restaurants: one at 9800 Natural Bridge in Berkeley, Missouri; one at 219 North Florissant in Ferguson, Missouri; and one at 9633 St. Charles Rock Road in Breckenridge Hills, Missouri. The same person owned all three restaurants.

On July 31, 1988, defendant drove Philip Rodney Brown ("Brown") and Brown's brother to the Ferguson Kentucky Fried Chicken Restaurant. They arrived about 10:30 p.m., soon after the restaurant closed. Defendant parked his vehicle in a nearby church parking lot and waited while the Brown brothers held restaurant employees at gunpoint and took money from the cash registers. After collecting the money, the Brown brothers returned to the vehicle, and the defendant drove them away.

On October 14, 1988, defendant drove Brown to the Berkeley Kentucky Fried Chicken restaurant. Defendant entered the restaurant first and went into the men's restroom. After leaving the restaurant, defendant informed Brown that he could hide in the ceiling of the restroom until the restaurant closed for the evening. Brown then entered the restaurant and hid himself in the restroom, as instructed. Shortly after closing time at 10:00 p.m., Brown came out of the restroom brandishing a gun, forced some employees into a cooler, and forced the manager to give him money. Brown then left the restaurant, and defendant, who was waiting in his car, drove them away.

On October 28, 1988, after rejecting the idea of robbing the Breckenridge Hills restaurant, the Brown brothers again robbed the Kentucky Fried Chicken restaurant in Berkeley. Although defendant helped to plan the second robbery of the Berkeley restaurant and intended to drive the "getaway" car, he became frightened and decided not to participate further.

Berkeley police arrested defendant on February 2, 1989. He was taken to the Berkeley police station and placed in a small interrogation room where he made an audiotaped confession of his involvement in all three robberies. The next day, he was transported to the Ferguson police department, where he made a written confession about his involvement in the robbery of the Ferguson restaurant. That same day, after being released on bond, he apologized to the owner of the restaurants he robbed and promised to make restitution. Defendant's mother, the manager of the Ferguson Kentucky Fried Chicken restaurant, was present when defendant offered this apology. He also apologized to an employee who had been the immediate victim of one of the robberies.

Defendant was charged with the July 31 and October 14 robberies and tried on a theory of accomplice liability, but he was not charged with the October 28 robbery. At trial, defendant denied his involvement in all of the robberies. His defense was alibi, testified to by a girlfriend and by another woman he referred to as his "play mother." In his own testimony defendant claimed his confessions were coerced by the police.

■ The claim on which this Court accepted transfer from the court of appeals is that the trial court erred in permitting comments by the prosecutor and testimony from State's witnesses concerning the October 28 robbery. Defendant was not charged with that crime, and he cites the general rule that evidence of uncharged crimes is inadmissible to show the defendant's propensity to commit such crimes. The State's initial response, later adopted by the court of appeals, was that defendant's involvement in the October 28 robbery was part of a common plan or scheme of robbing Kentucky Fried Chicken restaurants with the assistance of insider information. As the State correctly points out, an exception to the general rule of inadmissibility is recognized where the evidence of uncharged crimes is offered to prove a common plan or scheme of criminal activity. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993); *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992). However, in *Bernard*, handed down while this case was pending before the court of appeals, this Court explained that the common scheme or plan exception cannot be invoked where the evidence reveals only that the charged and uncharged crimes are a series of similar crimes. *Bernard*, 849 S.W.2d at 14. Instead, the evidence must show that the uncharged crime was part of a "larger plan," part of the

same "general criminal enterprise" for which defendant is being tried. *Id.* at 13–14. The State, in its brief and in oral argument on transfer to this Court, properly conceded that the common scheme or plan exception does not apply to this case, and the State acknowledges that the series of robberies culminating in the October 28 robbery is nothing more than a series of similar crimes.

■ On a different tack, the State now suggests that evidence of the October 28 robbery was properly admitted on the issue of defendant's motive, and, because defendant professed an alibi, on the issue of the defendant's identity. Although motive and identity are two other exceptions to the rule prohibiting evidence of uncharged crimes, we need not address the arguments on their merits because we are convinced that any impropriety in admitting evidence regarding the October 28 robbery was nonprejudicial. Initially, we note that the evidence of defendant's involvement in the October 28 robbery was minimal because defendant withdrew his participation before the offense was committed. The likelihood of prejudice is obviously less in this instance than had defendant followed through with the plan. More important, in view of the confessions, the evidence against defendant on the two robberies for which he was charged was overwhelming. The detail and specificity with which Neil recounted his conduct to the police—information that could only have come from a participant or one who was otherwise closely involved with the crime—tends to corroborate the confessions. Moreover, his apology to the restaurant owner and his promise of restitution, made in his mother's presence, as well as his apology to an additional victim, further corroborate the confessions and refute his claim that the confessions were coerced by the police. At trial, his claim of police coercion was supported solely by his own testimony, and the credibility of his alibi witnesses was substantially diluted by the prosecutor's vigorous cross-examination. Under these circumstances, we hold that the error, if any, in admitting evidence of the uncharged October 28 robbery was harmless error.

■ In his second point, defendant claims that the State's peremptory challenges used to remove two African–Americans from the venire panel were racially motivated in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To address a *Batson* challenge at trial, this Court has set forth the following procedure:

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992) (citations and footnotes omitted). Defendant complied with the first step of this procedure by making a *Batson* objection to the State's use of its peremptory challenges to remove two African–American venirepersons.

In reply, the prosecutor stated that he struck the two venirepersons because they both responded affirmatively when asked if they believed that "law enforcement officers treat Black people or young Black males worse than they treat other people." The prosecutor explained that the jurors' opinion on that point was particularly important because the State's case relied primarily on the defendant's confessions to the police. In addition, the prosecutor indicated that one person struck was a minister and, therefore, he may tend to be more lenient and merciful. Furthermore, this person indicated that he had a son who was arrested during a domestic dispute and who, at the time of the arrest, had a weapon in his possession. The other person struck was employed by the St. Louis City juvenile court. The State claimed that this person, accustomed to lenient dispositions in juvenile cases, might not be willing to impose the ten-year sentence the State was seeking against the defendant.

Although defendant claimed that the State's explanation for the strikes was pretextual, the trial court found that the explanations were race neutral and not pretextual. On appeal, the trial court's determination will not be overturned unless clearly erroneous. *Id.* at n. 7. Based on the record before us, the trial court's finding was not clearly erroneous. Defendant's point is denied.

Defendant next challenges the trial court's failure to suppress evidence of his confessions to the police. In his brief, defendant asserts that his confessions were involuntary and were the product of psychological coercion. He explains that the police officers who elicited the confessions interrogated him for about two hours in a small room, that they carried weapons during the interrogation, and that they threatened to implicate his mother in the crimes. There is no record that a hearing was conducted on defendant's motion to suppress the confession. Nor does the record contain a complete copy of this motion. From our review of the trial transcript, we conclude that there was substantial evidence that defendant's confessions were made voluntarily. No jurisprudential purpose would be served by an extended opinion on this point. Rule 30.25(b). Defendant's third point is denied.

■ Next, defendant claims that the trial court erred in admitting into evidence photographs depicting the room in which the Berkeley police officers interrogated him. He contends that the court should have sustained his motion for a mistrial 1) because the State failed to disclose the photographs pursuant to defendant's discovery request under Rule 25.03 and 2) because the photographs did not accurately reflect how the room looked at the time of the interrogation. Defendant posits that the challenged photographs "went to the issue of whether the confession was made knowingly and voluntarily."

■ We first address defendant's argument as it relates to the State's failure to disclose the photographs. The court may impose sanctions for a party's failure to comply with an appropriate discovery request. Rule 25.16. Whether a sanction should be imposed for noncompliance is a matter that

lies within the sound discretion of the trial court. *State v. Johnson,* 702 S.W.2d 65, 73 (Mo. banc 1985). When the court declines to impose a sanction, we must determine whether the State's discovery violation resulted in fundamental unfairness or substantively altered the outcome of the case. *Id.* Even though defense counsel did not have an opportunity to examine the State's evidence in advance of trial, it must still be shown that the outcome of the trial would have been different had he been able to prepare to meet the evidence. *State v. Kilgore,* 771 S.W.2d 57, 66 (Mo. banc), *cert. denied* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989).

Defendant does not indicate what he would have done differently had the State disclosed the photographs earlier. In view of our holding in the preceding point that there was no substantial evidence from which it could be inferred that the Berkeley police coerced defendant to confess, it is difficult to imagine what impact the pictures of the interrogation room would have had on that issue at trial. Moreover, as stated earlier, the evidence against defendant was overwhelming. Thus, defendant has failed to establish that "the outcome of the trial would have been different."

As to defendant's claim that the photographs were inaccurate, we note that the prosecutor elicited evidence of the similarities and the differences between the room as it was at the time of defendant's interrogation and as it was depicted in the photographs. Any differences that existed at the time of defendant's interrogation and at the time of the taking of the photographs went to the weight of the evidence. *See State v. Redding,* 357 S.W.2d 103, 109 (Mo.1962); *State v. Stephens,* 708 S.W.2d 345, 350 (Mo. App.1986). The court did not abuse its discretion in admitting the photographs into evidence. This point is denied.

■ For his next claim, defendant states that the trial court erred when it did not permit defense counsel to cross-examine a State's witness about the details of a prior, unrelated offense to which the witness pleaded guilty. The witness was one of defendant's co-workers at the Ferguson restau-

rant. During cross-examination by defense counsel, the witness testified that she pleaded guilty to felony stealing in 1991 and was placed on probation for three years. The trial court, however, did not allow defense counsel to elicit the details of the crime from the witness. Defense counsel professed to the trial court that the testimony was not being offered to impeach the witness but to demonstrate that "[i]t's [a] common plan or scheme as far as [the witness] may have been in on [the robbery]."

Defense counsel did not preserve this error for appellate review because he failed to make the requisite offer of proof. *State v. Schneider,* 736 S.W.2d 392, 401 (Mo. banc 1987), *cert. denied* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). Even if defense counsel had made a proper offer of proof, we find no relevance to the testimony he sought to elicit from the witness. We are at a loss to understand how the details of the witness' plea of guilty to an unrelated crime may in any way demonstrate that she, herself, was "in on" the robberies for which defendant was tried. This point is also denied.

■ Defendant also asserts that the trial court erred in refusing to submit two proffered instructions concerning the lesser included offense of robbery in the second degree. The trial court is not required to instruct the jury with respect to a lesser included offense unless there is a basis for acquitting the defendant of the offense charged and convicting him of the lesser included offense. *State v. Mease,* 842 S.W.2d 98, 110–11 (Mo. banc 1992), *cert. denied* —— U.S. ——, 113 S.Ct. 2363, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

■ Here, defendant's testimony did not provide the basis for the lesser included offense. His defense was alibi. When defendant denies the commission of the charged offense and there is no evidence to mitigate the offense or provide a different version of the offense, instructing down is not required. *State v. Petary,* 781 S.W.2d 534, 544 (Mo. banc 1989), *vacated,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931, *aff'd,* 790 S.W.2d 243 (Mo. banc), *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990). Under the evidence of this case, defendant was either guilty of robbery in the first degree or he was not guilty of any crime. The trial court did not err in refusing to give the proffered instruction.

■ In defendant's last point, he contends that the trial court erred by permitting the State to argue an adverse inference from defendant's failure to call his mother as a defense witness, an inference that his mother's testimony would have been unfavorable to him. The State counters that the adverse inference was supported by the evidence that defendant's mother was present when he apologized to the owner of the restaurants.

■ If a defendant fails to call an available witness whom one might reasonably expect to testify in the defendant's favor, the prosecution may comment on that failure. *State v. Moore,* 620 S.W.2d 370, 373 (Mo. banc 1981); *State v. Dudley,* 809 S.W.2d 40, 42–43 (Mo.App.1991). The defendant's failure to call such a witness tends to create the logical inference that the defendant did not call the witness because the testimony of the witness would damage rather than assist the defense. *Dudley,* 809 S.W.2d at 43. In addition, if the facts make clear that the testimony of the witness would tend to favor the defendant, the court may justifiably find that the witness was "peculiarly available" to the defendant, thus giving rise to the adverse inference. *Id.*

■ Defendant relies on *State v. Chunn,* 784 S.W.2d 228, 230 (Mo.App.1989), to support the proposition that it is impermissible to draw an adverse inference if the missing witness is equally available to both parties. In *Chunn,* the Court of Appeals, Eastern District, rejected the idea that the sibling relationship between the absent witness and the defendant automatically gave rise to the inference that a brother would be more likely to testify favorably for his brother. *Id.* at 231. The court held that the sibling relationship, standing alone, was insufficient to infer that the brother was more available to the defendant than to the State. The trial court, therefore, abused its discretion in permitting the State to argue an adverse inference from defendant's brother's failure to testify. *Id.*

*Chunn,* however, is distinguishable from this case on its facts. In *Chunn,* the defendant's brother was a potential co-defendant in the crimes for which the defendant was charged. *Chunn,* 784 S.W.2d at 231. In his confessions, the defendant had implicated his brother as a co-participant, and as a result, the brother had also been charged with the crimes. *Id.* Although the State had filed a memo of *nolle prosequi* prior to the defendant's trial, it could have refiled charges against the brother if he testified for the defendant. *Id.*

In this case, there was no evidence linking defendant's mother to the crimes with which defendant was charged. Nor was the mother threatened with criminal prosecution by the State if she testified. Defendant's mother's only involvement with these crimes was that she was present when defendant offered his apology to the restaurant owner.

Implicit in the adverse inference is the assumption that the close family relationship between mother and son would make the mother more available to the defendant than to the State. *Dudley,* 809 S.W.2d at 43. It is error to hold that the witness is equally available if the relationship of the missing witness to the defendant would reasonably lead one to expect the witness to testify in favor of the defendant. *Id.* In this case, there was no evidence that the relationship between defendant and his mother was otherwise, and therefore, defendant's mother was "peculiarly available" to testify for defendant. Accordingly, the trial court did not abuse its discretion in permitting the State to argue the adverse inference. Defendant's final point is denied.

The judgment of the trial court is affirmed.

All concur.