

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED101920 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1322-CR02020 |
| | ) | |
| ANTHONY HARPER, | ) | Honorable Michael F. Stelzer |
| | ) | |
| Appellant. | ) | FILED: February 16, 2016 |

## Introduction

Anthony Harper (Defendant) appeals from a sentence and judgment of conviction for attempted burglary in the second degree. He argues the trial court erred in allowing the State to argue an adverse inference from Defendant's failure to call a particular witness for the defense. We affirm.

## Background

The State charged Defendant as a prior and persistent offender with the class D felony of attempted burglary in the second degree. Viewed in a light most favorable to the verdict,[1] the evidence at trial showed the following.

An off-duty St. Louis Metropolitan Police Department Lieutenant Eric Pearson (Lt. Pearson) was at his home at 11:00 p.m. when he heard the sound of an idling vehicle outside. He

---

[1] State v. Miller, 372 S.W.3d 455, 463 (Mo. banc 2012).

went to the window and saw a male in a hooded sweatshirt exit the vehicle and enter the alley next to a law office. Lt. Pearson called 911. Police officers responded to the scene and discovered Angela Harper (Miss Harper), Defendant's sister, in the vehicle. The officers noticed someone in the alley, but when they attempted to speak to that person, the person ran and the officers were unable to catch the person. In the alley, the officers discovered two crowbars in the landing leading to the law office's basement. They observed pry marks on the door to the law firm and that the steel plate around the door knob was pried back. An attorney with the law office testified that he had observed the basement door earlier that day, and the door was undamaged and there were no crowbars by the door.

The officers interviewed Miss Harper at the scene. Over objection,[2] the testifying officers stated Miss Harper initially told the officers she was driving to a friend's house and got tired and pulled over. On further questioning, Miss Harper stated Defendant, her brother, had been in the car with her, because he had asked her to pick him up and drive him to a girl's house. She had dropped him off in the alley and was waiting for him to return. Because the officers did not believe Miss Harper's answers, they arrested her on suspicion of being an accomplice to an attempted burglary and transported her to the police station. At the police station, the officers had Miss Harper call Defendant. The officers spoke with Defendant and explained they were investigating a burglary and they needed to speak with him. Defendant came into the police station where he waived his Miranda rights and confessed that he had attempted to break into the law office to steal checks.

---

[2] As explained more fully below, the trial court had initially granted Defendant's *motion in limine* to prevent the State from eliciting the substance of Miss Harper's statements to the police; however, as the trial progressed, the trial court held that Defendant opened the door to allow the State to question police about the substance of Miss Harper's statements to them.

Prior to trial, Defendant filed a motion *in limine* to prevent the State from admitting out-of-court statements of Miss Harper. The trial court initially ruled the officers could explain the course of their investigation without specific statements or quotations from Miss Harper. However, during opening statements, counsel for Defendant stated when the police arrested Miss Harper, she was "hysterical" and "[did not] understand why they [were] doing this to her." The State argued that this opened the door to allow the State to similarly adduce evidence on what she stated to the police. The Court agreed that counsel for Defendant "probably ha[d] opened the door."

During the State's case, counsel for Defendant cross-examined the testifying officers about their basis for arresting Miss Harper, suggesting the officers had no reasonable basis to believe a crime had occurred or to detain and arrest Miss Harper. Specifically, defense counsel asked if Miss Harper had told the officers she was involved in, or not involved in, criminal activity, and counsel argued Miss Harper had truthfully told the officers what she was doing there. Counsel also elicited testimony that Miss Harper was upset and "sobbing" over being arrested. Based on this questioning, the trial court held that the defense had opened the door to the substance of what Miss Harper said to the police.

Prior to closing arguments, the State requested permission to argue an adverse inference from Defendant's failure to call Miss Harper as a witness if Defendant during closing arguments asserted he only confessed due to the police officers' mistreatment of his sister. The trial court agreed that if Defendant argued his confession was coerced by the officers' conduct with his sister, the State could argue an adverse inference in its rebuttal from Defendant's failure to call his sister to support his theory. During closing arguments, Defendant argued his confession was coerced and involuntary in that he only confessed because the police had his sister in custody,

3

crying hysterically, and the police were setting her up for a burglary they had no evidence she committed. He argued he falsely confessed "just to get [his] sister out of custody." In a final sidebar conference, the State argued Defendant made Miss Harper into a vital witness by creating the impression to the jury that her testimony would be favorable to the defense, but then not calling her as a witness. The trial court agreed that the defense had made Miss Harper an issue "from day one" and thus allowed the State to argue an adverse inference from Defendant's failure to call her as a witness. The State then argued over Defendant's objection:

> The defense wants you to believe that this confession was coerced, and that the defendant never would have come in to give it; however, he did come in to give it, and if it was coerced they want you to believe it's because his sister was in custody. Where is she? They had an opportunity to bring her in, and put her on the stand and tell you the treatment she received. ... Angela Harper could have come in here and told you about the mistreatment that the police gave her that was so bad that her brother had to come in and confess for her. You know why she's not here, that didn't happen. If it happened don't you think she would come in here and put all those officers to task, and tell you had badly they treated her, or what crummy officers and crummy people they are. ... [B]ut she's not. She's not here to tell you about that ... because it never happened.

The jury found Harper guilty of attempted burglary in the second degree. The trial court sentenced him to five years in the Missouri Department of Corrections. This appeal follows.

<u>Discussion</u>

In his sole point on appeal, Defendant argues the trial court erred in allowing the State to argue during closing argument an adverse inference from Defendant's decision not to call Miss Harper to testify for the defense, in that Miss Harper was not peculiarly available to the defense and Defendant's statements during closing argument did not invite retaliation through an adverse inference, causing prejudice. We disagree.

4

A trial court has broad discretion in its control over closing arguments, and our review is for an abuse of that discretion. State v. Forrest, 183 S.W.3d 218, 226 (Mo. banc 2006). Error during closing arguments does not require reversal unless it amounts to prejudicial error. Id. The prejudicial effect of the comment must be viewed in the context of the entire record and in light of the instructions to the jury. See State v. Riley, 440 S.W.3d 561, 567 (Mo. App. E.D. 2014).

In general, the State may not during closing arguments argue an adverse inference from the defendant's failure to call a witness who is equally available to both parties. State v. Tinsley, 143 S.W.3d 722, 735 (Mo. App. S.D. 2004); see also State v. Crump, 875 S.W.2d 241, 242 (Mo. App. E.D. 1994). An exception to this general rule, however, exists where the State's comments are made in retaliation to arguments made during the defendant's closing statement. Crump, 875 S.W.2d at 242. The trial court has broad discretion in allowing retaliatory arguments, and it may allow the State to "retaliate to an issue raised by the defense even if the [State's] comment would be improper." State v. Sanchez, 186 S.W.3d 260, 265 (Mo. banc 2006).

Here, Defendant's theory of the case was that the police did not have sufficient evidence to arrest either Miss Harper or him, and that he falsely confessed to the attempted burglary because the police had improperly arrested his sister and were trying to set her up for a crime she did not commit. Thus, Defendant argued the jury should disregard his confession because it was coerced and involuntary. Before closing arguments, the trial court had warned Defendant that if he argued that police "conduct with his sister" caused him to confess, the court would allow the State to argue an adverse inference from his failure to call his sister to corroborate that defense. Although Defendant argues on appeal that because he did not argue the police mistreated Miss Harper he therefore did not attack police "conduct with his sister," this argument fails. By

5

arguing the police set up Miss Harper for a crime they had no evidence she committed, Defendant did in fact attack the conduct of the police with his sister.

The trial court did not err in allowing the State to retaliate against Defendant's argument. Retaliation is appropriate to rebut an argument that a confession was coerced. See State v. Jones, 921 S.W.2d 28, 33 (Mo. App. W.D. 1996) (allowing State to argue adverse inference from defense's failure to call detective in retaliation to defense's argument that detective coerced defendant's confession). "A defendant cannot provoke a reply to his argument and then assert error." State v. McCain, 845 S.W.2d 99, 101 (Mo. App. E.D. 1993). Defendant here argued that the police conduct of setting up his sister caused him to falsely confess, which is an argument against which the State is entitled to retaliate. See Jones, 921 S.W.2d at 33.

Moreover, Defendant has not persuaded this Court that the State's comment was decisive in influencing the jury's verdict. State v. Banks, 215 S.W.3d 118, 121 (Mo. banc 2007) ("even if the prosecution's argument was improper, reversal is appropriate only if it is established that the comment of which Appellant complains had a 'decisive effect on the jury's determination'"). The State in its rebuttal attacked Defendant's theory of the case—that he falsely confessed to save his sister—on several grounds, only one of which was pointing out that his sister did not testify to corroborate his theory.

The State also argued that the facts supported Defendant's confession. Lt. Pearson saw someone exit Miss Harper's vehicle and enter the alley. Shortly thereafter, the responding officers saw someone in the alley, and subsequently discovered crowbars and damage to the door of the law office. Miss Harper told officers her brother was in her vehicle and she dropped him off by the alley so he could go a back way to a girl's house. In this factual framework, the jury could weigh Defendant's confession that he was in his sister's car and got out to enter the alley

6

to break into the basement door of the law office to steal checks, against his claim at trial that he falsely confessed solely because his sister was in police custody and he did not in fact attempt to break into the law office. The facts here created a strong inference that Defendant's confession was accurate, voluntary, and not coerced.

The trial court did not abuse its broad discretion in allowing the State to make during closing arguments an adverse inference from Defendant's failure to call Miss Harper as a witness in retaliation for Defendant's argument that police conduct with Miss Harper was what caused him to falsely confess. See Sanchez, 186 S.W.3d at 265 (trial court has broad discretion in allowing retaliatory arguments). Because we conclude the trial court did not err in allowing the adverse inference for retaliation, we do not need to address Defendant's other argument that Miss Harper was not peculiarly available to the defense. Point denied.

## Conclusion

The judgment and sentence of the trial court is affirmed.

Gary M. Gaertner, Jr., Judge

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

7