

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
Plaintiff-Respondent, )
)
vs. )    No. SD37691
)
JEREMY DAMON GUEST, )    **Filed: July 9, 2024**
)
Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

The Honorable William Edward Reeves, Judge

**<u>AFFIRMED</u>**

Jeremy Damon Guest ("Guest") appeals the judgment of the Circuit Court of New Madrid County ("trial court") convicting him of voluntary manslaughter, armed criminal action, stealing, and unlawful use of a weapon following a jury trial.[1] Raising two points on appeal, Guest argues the trial court abused its discretion by overruling the defense's objection when the State asked Guest why he was the only witness to testify about the events in question (Point I) and further abused its discretion by overruling the defense's

---

[1] *See* sections 565.023, 570.030, 571.015, and 571.030. All references to statutes are to RSMo 2016, including all applicable statutory changes effective January 1, 2017, unless otherwise indicated.

objection when the State stated in its closing argument that an acquittal would tell D.H.'s ("Victim") family he deserved to die (Point II).  We affirm.

**Factual Background and Procedural History**

In the early morning of February 16, 2020, Guest and Victim both attended a party at "The Club House" in Marston, Missouri.  A lot of people from the party, including Guest and Victim, went to a Pilot Truck Stop afterwards, where they continued talking and partying.  Victim pulled his car up next to a gas pump, and Guest parked his car right next to Victim's car.

Another partygoer ("Eye Witness") went to the Pilot Truck Stop after the party to get a hot dog.  As she parked and got ready to go into the store, she noticed there was "kind of like a hostile type of environment" and "angry energy" occurring in front of her.  Eye Witness saw that Guest's younger brother ("Brother") had pinned Victim against his car, and Guest was standing beside them.  According to Eye Witness, Victim looked "defenseless" with nobody fighting on his behalf.

Eye Witness looked for her wallet in her car, and, after she looked up, she saw Guest had started "point[ing] around" a gun.  When Guest pulled out his gun, Victim was, in Eye Witness's words, still "hemmed up" against the car.  Eye Witness moved her car and went inside the Pilot Truck Stop, and she then heard gunshots from inside the store.  When she went outside, Eye Witness saw Brother trying to get Guest to leave and Victim lying on the ground.

Before the shooting, Victim's girlfriend ("Girlfriend") had gone into the Pilot Truck Strop to use the bathroom when someone came in and said there was a commotion outside.  Girlfriend and Victim's cousin ("Cousin") then tried to get Victim back to his

2

car. Victim pushed Girlfriend away to protect her and to get his gun from the car. When Girlfriend ran back to Victim, both Guest and Victim were "at the gun stance." As Girlfriend described it, Guest "had his gun pointed at [Victim], and by that time, [Victim] turned around and pointed his gun back at him." Victim told Guest to put his gun down so they could fight with their fists instead. Guest responded, "no, I told you I was going to kill you." At that point, Guest started shooting Victim.

Guest first shot Victim in the arm. Victim tried to lift his arm with the gun, and Guest shot again. Once Victim fell to the ground, Guest walked over, kicked Victim's gun away, stood over Victim, and repeated, "I told you I was going to kill you[.]" Guest then picked up Victim's gun and left. According to Cousin, Victim never fired a shot, and Guest was "shooting and walking towards [Victim] at the same time." Victim sustained nine total gunshot wounds, and died from the gunshot wounds to his chest and abdomen.

The State charged Guest with murder in the first degree (Count I), armed criminal action (Count II), robbery in the first degree (Count III), and unlawful use of a weapon (Count IV). His case proceeded to a jury trial on June 2, 2022. At trial, Eye Witness, Girlfriend, and Cousin testified to Guest shooting Victim at the Pilot Truck Stop. Girlfriend could not remember how many times Guest shot Victim, but said it was "multiple times" and agreed there were at least four shots. The Assistant Chief for the New Madrid Police Department testified that law enforcement collected 10 shell casings from the crime scene, and the location of the shell casings indicated the shooter may have been moving forward while firing the gun. At various points in the trial, the State played

3

a cell phone video of the events leading up to the shooting as well as two different surveillance videos from the Pilot Truck Stop.

Guest testified that Brother had not pinned Victim against a car at the Pilot Truck Stop, but "a lot of people start[ed] to come around Brother" while Guest was still in his vehicle. Victim and Brother then "both had each other by the shirt." Guest further testified that he put his firearm down by his side as he ran over to Brother, several people started grabbing at his hand with the gun, and Victim started coming toward Guest. Guest said he only started shooting after Victim cocked his own gun and started bringing his arm up. Under cross-examination from the State, Guest admitted he had a gun out first before Victim.

Guest testified to a prior encounter he had with Victim at a card game five months before the shooting. Victim allegedly stood behind Guest and started rubbing his hands together and mumbling, which Guest viewed as a taunt. That situation escalated to the point that Victim and Guest were "fixing to fight[.]" Guest also testified about a fight he and Victim had in October of 2019, which was recorded and posted on Facebook, where Victim asked, "what are you going to do[,] kill me" and Guest responded, "you think I won't"?

Also during cross-examination, the State asked Guest whether Brother was going to testify.[2] The following exchange occurred:

[State]: Do you know if [Brother is] going to testify today?

[Guest]: I don't know.

[State]: So the only people -- all these people that are out there and [Victim] and your brother have each other by the collar, all these people out there, and, the only person we're hearing is from [sic] you, correct?

[2] Guest endorsed Brother as a witness before trial, but Brother did not testify.

4

[Guest]:  Yes.

At this point, the defense requested a bench conference, where it objected to the State's

questions about Brother testifying:

> [Defense]:  Judge, I'm going to object and ask that in regard to those questions about, comments that we're all going to hear from [B]rother be stricken. That's essentially shifting the burden on to all witnesses and that's improper, and so we ask that the comments by [State's counsel] be stricken and the jury disregard those.
>
> THE COURT:  [State's counsel]?
>
> [State]:  Judge, that he has endorsed this witness and if he's saying that he's doing this to protect his brother, his brother is an endorsed witness and the State is just asking if he's going to testify and say that [sic] the things that he's saying, and he was probably the only other person out there to verify to what he's saying.
>
> THE COURT:  I think that you're getting ready to move onto something else, aren't you?
>
> [State]:  Yes, sir.

The trial court overruled the defense's objection and request.

During closing arguments, the defense maintained that Guest acted in defense of

another on behalf of Brother and self-defense of himself when he shot Victim.  The State

addressed the issue of self-defense in its rebuttal closing argument, stating:

> When deadly force is used correctly, the person who was exercising it, has the right to take another person's life legally. A not guilty verdict would be telling [Victim's] family . . . Would be telling them that [Victim] deserved to [die[3]] for what he did that night. And what did he do? When someone was coming at him with a gun, he went and got his gun. Which he has the right to do.

---

[3] The trial transcript reflects the State's comment was "deserved to do[.]"  We understand this to be a typographical error, and both parties have confirmed this to be the case.

The defense objected to this statement as improper argument, which the trial court overruled.  The jury later found Guest guilty of the lesser-included offense of voluntary manslaughter in Count I, armed criminal action in Count II, the lesser included offense of stealing in Count III, and unlawful use of a weapon in Count IV.  In his motion for new trial, Guest argued the trial court erred by overruling his objections to "questions asked of [Guest] by the State about [Brother] not testifying" and erred again "by overruling his objection to the State's comment during its rebuttal argument, that a not guilty verdict would be akin to the jury telling the victim's family that the victim didn't deserve to live."  The trial court denied Guest's motion for new trial and this timely appeal followed.

**Points On Appeal**

<u>Point I – The Trial Court did not Abuse its Discretion by Overruling the Defense's Objection to the Scope of Cross-Examination.</u>

*Standard of Review*

"On appeal, a trial court's ruling regarding . . . the extent and scope of cross-examination is reviewed for abuse of discretion."  ***State v. Winfrey***, 337 S.W.3d 1, 5 (Mo. banc 2011).  "An abuse of discretion occurs when the [trial] court's ruling is 'clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful[,] deliberate consideration.'"  ***State v. Mills***, 623 S.W.3d 717, 729 (Mo App. E.D. 2021) (quoting ***Mansil v. Midwest Emergency Med. Servs.***, 554 S.W.3d 471, 475 (Mo. App. W.D. 2018)).  "We review for prejudice and not mere error; and will affirm the trial court's ruling unless it was so prejudicial as to deprive defendant of a fair trial."  ***State v. Hawkins***, 328 S.W.3d 799, 808 (Mo. App. S.D. 2010).  "Trial court error is prejudicial if

6

there is a 'reasonable probability that the [trial] court's error affected the outcome of the trial.'" **Winfrey**, 337 S.W.3d at 5 (quoting **State v. Barriner**, 111 S.W.3d 396, 401 (Mo. banc 2003)).

*Analysis*

We first analyze whether Guest properly preserved his argument under Point I. **State v. Nichols**, 618 S.W.3d 747, 749 (Mo. App. S.D. 2021). An allegation of error "must be objected to during the trial *and* presented to the trial court in a motion for new trial" to be preserved. **Id.** (quoting **State v. Loper**, 609 S.W.3d 725, 732 (Mo. banc 2020)). "A claim contained in a motion for new trial 'must be the same as the claim on the appeal[.]'" **State v. Crider**, 611 S.W.3d 904, 907 (Mo. App. S.D. 2020) (quoting **State v. Nickels**, 598 S.W.3d 626, 633 (Mo. App. E.D. 2020)). "[A]llegations of error in a motion for new trial may not be changed or broadened on appeal." **Id.** at 907-908 (quoting **State v. Johnson**, 358 S.W.3d 574, 576 (Mo. App. S.D. 2012)).

Guest argues in Point I that the trial court abused its discretion by overruling the defense's objection when the State asked Guest "in cross-examination *why he was the only witness to testify about the events of that night* [at the Pilot Truck Stop]," because the State "shifted the burden to [Guest] to prove his innocence." (Emphasis added). Contrary to this point on appeal, the defense's specifically stated objection at trial was limited to the State's questions and comments regarding Brother not testifying, as opposed to Guest being the "only" witness. Guest similarly alleged in his motion for new trial, "The Court erred to the prejudice of [Guest] by overruling [sic] to questions asked of [Guest] by the State about [Brother] not testifying." Because Guest cannot change or broaden his claim on appeal from that alleged in his motion for new trial, his "only

7

arguments preserved for appellate review were those made at trial, presented in his motion for new trial, and included in his point relied on": that the trial court erred by overruling his objections to the State's questions about Brother not testifying.[4] *Crider*, 611 S.W.3d at 908. We review only this claim of error previously preserved for an abuse-of-discretion.

Turning to the merits of Guest's argument, the State may generally not "argue an adverse inference from the defendant's failure to call a witness if the witness appears equally available to both the State and the defendant." *State v. Hernandez*, 613 S.W.3d 909, 916 (Mo. App. S.D. 2020).

> *Equally available* means more than merely being susceptible to service of process and is determined by consideration of the following three factors: (1) one party's superior ability to know or identify the witness; (2) the nature of the testimony expected to be given by the witness; and (3) a relationship between a party and the witness which indicates a likelihood that the witness would testify more favorably for one party than the other.

*State v. Tinsley*, 143 S.W.3d 722, 735 n.8 (Mo. App. S.D. 2004) (quoting *State v. Crawford*, 32 S.W.3d 201, 207 (Mo. App. S.D. 2000)). When it is clear from the facts that a witness's testimony would tend to favor the defendant, the trial court may find the witness to be "peculiarly available" to the defendant and not equally available to the State. *State v. Neil*, 869 S.W.2d 734, 739 (Mo. banc 1994); *see also State v. Hopkins*, 947 S.W.2d 826, 829 (Mo. App. W.D. 1997) (quoting *Graves v. U.S.*, 150 U.S. 118, 121

---

[4] We may review unpreserved claims for plain error. *State v. Brandolese*, 601 S.W.3d 519, 525-26 (Mo. banc 2020). However, because Guest has not requested plain error review for any unpreserved claim, he has not met his burden of proving the manifest injustice required for plain error. *State v. Brown*, 661 S.W.3d 27, 40-41 (Mo. App. S.D. 2023). We therefore decline to exercise plain error review over Guest's claim the trial court erred by overruling the defense's objections to the State's questions regarding Guest being the "only" testifying witness.

(1893)) ("An exception to this general 'missing witness rule' arises when a defendant fails to call a 'peculiarly available' witness reasonably expected to testify in the defendant's favor."); *State v. Johnson*, 529 S.W.2d 166, 169 (Mo. App. K.C.D. 1975) (quoting *State v. Collins*, 165 S.W.2d 647, 648-49 (Mo. 1942)) ("[A] witness may be said to have been peculiarly 'available' to one party to an action, so that upon that party's failure to have produced him in court an inference will arise that his testimony would have been unfavorable, when, because of such party's opportunity for knowledge of or control over the witness, or the community of interest between the two, or the prior statements and declarations of the witness, it would be reasonably probable that the witness would have been called to the trial to testify for such party except for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable.").

When a witness is peculiarly available for a defendant, the State may comment on the defendant's failure to call that witness "whom one might reasonably expect to testify in the defendant's favor[.]" *Neil*, 869 S.W.2d at 739; *State v. Robinson*, 752 S.W.2d 949, 953 (Mo. App. S.D. 1988). The failure to call a peculiarly available witness "tends to create the logical inference that [the] defendant did not call the witness because his [or her] testimony would damage rather than assist the defense." *State v. Dudley*, 809 S.W.2d 40, 43 (Mo. App. W.D. 1991). An adverse inference based on a peculiarly available witness's absence, "does not shift the burden of proof from the [S]tate to the accused." *Id.* "The State must still shoulder its burden of proving the guilt of the accused beyond a reasonable doubt." *Id.*

9

In this case, Guest had a superior ability to know his sibling, Brother, and one would reasonably expect Brother to more likely offer testimony favorable to Guest given their fraternal relationship. *See Neil*, 869 S.W.2d at 739-40 (holding that defendant's mother was peculiarly available to testify for defendant where the facts made clear that her relationship with her son "would reasonably lead one to expect the witness to testify in favor of the defendant"); *Dudley*, 809 S.W.2d at 42-43 (holding that defendant's mother was peculiarly available due to the "close family relationship between mother and son," as the facts made clear that her testimony would favor the defendant); *State v. Farrell*, 682 S.W.2d 118, 120 (Mo. App. E.D. 1984) (determining no trial court error where, during closing arguments, the State commented on the failure of the defendant to produce his brother, and due to defendant's relationship with his brother "it could be expected that he would testify more favorably for defendant than for the state"); *State v. Williams*, 625 S.W.2d 148, 149 (Mo. App. E.D. 1981) (holding that witnesses who were the brother and mother of defendant's close friend and co-participant in the charged offenses were not equally available as "they would be expected to testify more favorable for defendant than for the state"); *Johnson*, 529 S.W.2d at 169 (holding that the defendant's mother, defendant's stepfather, and the mother of defendant's children were not equally available to the State as their relationships with the defendant made them "peculiarly available" to the defendant). We recognize a familial relationship alone may be insufficient to infer Brother would testify more favorably for Guest. *See State v. Chunn*, 784 S.W.2d 228, 231 (Mo. App. E.D. 1989) ("The argument that the family relationship between siblings automatically gives rise to a judicial inference that a brother would be more likely to testify favorably for his brother is unsound."). Here, however,

10

Brother's participation in the events at the Pilot Truck Strop "gives rise to a common interest between" Guest and Brother. *Farrell*, 682 S.W.2d at 120 (explaining "[p]articipation or involvement in a crime with the defendant gives rise to a common interest between defendant and the witness" and holding no trial court error in permitting the State to comment on the failure of the defendant to produce his brother as a witness where the evidence showed they had a sibling relationship and the defendant's brother was present at the scene of the charged offenses); *see also Neil*, 869 S.W.2d at 739 (determining no trial court error in permitting the State to argue adverse inference as defendant's mother was "peculiarly available" to testify for the defendant where the evidence showed they had close mother-son relationship, she was the manager of one of the restaurants the defendant was charged with robbing, and she was present when the defendant apologized to the store owners for his actions); *Williams*, 625 S.W.2d at 149 (determining that the brother and mother of defendant's friend and co-participant present at scene of charged offenses "were not equally available as the witnesses bore such a relationship to defendant and to his co-participant that they would be expected to testify more favorably for defendant than for the state"); *Johnson*, 529 S.W.2d at 169 (holding that defendant's mother, defendant's stepfather, and the mother of defendant's children were not equally available witnesses to the State as all resided with the defendant and could have corroborated defendant's alibi).

Further, Guest testified that Brother did not push Victim against a car, and Guest further claimed the hostility only started once "a lot of people start[ed]" coming around Brother. This narrative gave a justification for Guest to protect Brother and disputed Eye Witness's description of Brother pinning a "defenseless" Victim. Given the nature of

11

Guest's testimony, one would expect Brother to corroborate Guest's account of events, "particularly as to who was the aggressor in this confrontation[,]" and thus testify more favorably for Guest than for the State. *Farrell*, 682 S.W.2d at 120; *see also **State v. Hemphill***, 721 S.W.2d 86, 89 (Mo. App. E.D. 1986) (holding family members were peculiarly available witnesses for the defendant when the defendant claimed he brought a gun to a tavern to protect his family); ***State v. Griffith***, 697 S.W.2d 258, 260 (Mo. App. E.D. 1985) (concluding a witness was peculiarly available for the defendant when he "created a strong impression" the witness would corroborate the events leading to a shooting). There is also no indication Brother would have testified more favorably for the State. *See **State v. Wallace***, 43 S.W.3d 398, 404 (Mo. App. E.D. 2001) (holding no trial court error in refusing to allow an appellant to argue an adverse inference from the State's failure to call a witness where it was evident that the witness was unwilling to cooperate with the State and was or had been the appellant's boyfriend); *Crawford*, 32 S.W.3d at 207 (holding that the victim's father was not a "peculiarly available" witness to the State where the record shows that the witness was not present during the incidents giving rise to the charged offenses and the witness did not have knowledge that would have exonerated the defendant).

We determine that Brother was a peculiarly available witness for Guest. The trial court therefore did not abuse its discretion by permitting the State to ask Guest about Brother not testifying at trial. *See **State v. Washington***, 444 S.W.3d 532, 544 (Mo. App. E. D. 2014) (holding a defendant's acquaintance who was expected to provide alibi testimony was peculiarly available to the defendant). Point I is denied.

<u>Point II – The Trial Court did not Abuse its Discretion in Overruling the Defense's Objection During the State's Closing Argument.</u>

*Standard of Review*

A trial court's ruling during closing arguments is similarly reviewed for an abuse of discretion. ***State v. Minor***, 648 S.W.3d 721, 732 (Mo. banc 2022). We again only "find an abuse of discretion if the [trial] court's ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." ***Id.*** (quoting ***State v. Rice***, 573 S.W.3d 53, 75 (Mo. banc 2019)). A trial court has broad discretion in its control over the parties' closing arguments, and any trial court error during closing arguments will only require reversal when it amounts to prejudicial error. ***State v. Harper***, 481 S.W.3d 915, 918 (Mo. App. E.D. 2016); ***State v. Hobson***, 522 S.W.3d 270, 273 (Mo. App. S.D. 2016). "[E]ven if the prosecution's [closing] argument was improper, reversal is appropriate only if it is established that the comment of which [the appellant] complains had a decisive effect on the jury's determination." ***State v. Banks***, 215 S.W.3d 118, 121 (Mo. banc 2007) (quoting ***State v. Armentrout***, 8 S.W.3d 99, 111-112 (Mo. banc 1999)) (internal quotation marks and citation omitted).

*Analysis*

Guest argues in Point II that the trial court abused its discretion by overruling the defense's objection during the State's closing argument because the State "improperly suggested that an acquittal would tell [Victim's] family that he deserved to die, which was designed to inflame the passions and prejudices of the jury." "Closing arguments must be interpreted with the entire record rather than in isolation." ***Hobson***, 522 S.W.3d at 274 (quoting ***State v. Miller***, 226 S.W.3d 262, 269 (Mo. App. S.D. 2007)). Viewing the record in total, we find no abuse of trial court discretion.

13

The State's closing argument cannot seek to "inflame the passions or prejudices of the jury against a defendant." *State v. Tate*, 561 S.W.3d 483, 491 (Mo. App. E.D. 2018) (quoting *State v. Dominguez-Rodriguez*, 471 S.W.3d 337, 350 (Mo. App. E.D. 2015)). However, it can respond to an argument by the defense even if the State's responsive comment would otherwise be improper in isolation. *State v Walls*, 744 S.W.2d 791, 798 (Mo. banc 1988); *State v. Blue*, 655 S.W.3d 396, 403-04 (Mo. App. E.D. 2022). Here, the defense claimed in its closing argument that Guest acted in self-defense of Brother and himself when he shot Victim. The State then responded to Guest's self-defense theory in its rebuttal argument by explaining to the jury that a person acting in legitimate self-defense "has the right to take another person's life[,]" but:

> A not guilty verdict would be telling [Victim's] family . . . Would be telling them that [Victim] deserved to [die] for what he did that night. And what did he do? When someone was coming at him with a gun, he went and got his gun. Which he has the right to do.

Read in context, the State's comment was designed to explain the law on self-defense. *See State v. Smith*, 456 S.W.3d 849, 852 (Mo. banc 2015) ("A defendant may be justified in the use of physical force when he reasonably believes such force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful force by another."). The State explained Guest's claim of self-defense was not justified because he was the initial aggressor, and Victim had "the right" to grab his gun when Guest "was coming at him with a gun[.]" This explanation was meant to bolster the State's explanation for Victim's death and to rebut Guest's self-defense theory, not inflame the jury's passions or prejudices. *See Dominguez-Rodriguez*, 471 S.W.3d at 350 (finding no error where a State's rebuttal argument "indicate[d] an intention to rehabilitate [the victim's] version of events" and dispute the defendant's credibility).

14

Moreover, even an improper closing argument will not warrant reversal unless the State's comment had a "decisive effect" at trial. **Banks**, 215 S.W.3d at 121. The State's closing argument had no decisive impact here because there "was overwhelming evidence of [Guest's] guilt." **Hobson**, 522 S.W.3d at 274. The jury heard from Guest that he and Victim had two fights before the shooting, including one exchange where Victim questioned whether Guest was going to "kill [him.]" Eye Witness testified that Victim looked "defenseless" in the encounter with Brother and that Victim was still "hemmed up" against the car when Guest pulled out his gun. Girlfriend testified that Guest said, "no, I told you I was going to kill you" when Victim wanted a fist fight instead and just before Guest started shooting at Victim. Cousin also told the jury Guest was "shooting and walking towards [Victim] at the same time[,]" indicating Guest was not merely defending himself, and Guest said, "I told you I was going to kill you" again after Victim fell to the ground. Additionally, the jury was able to view a cell phone video and two different surveillance videos depicting the events at the Pilot Truck Stop. We cannot conclude the State's "deserved to [die]" comment prejudiced Guest given the totality of evidence contradicting his claim of self-defense. To the extent the State made any improper argument, "fleeting, brief, and isolated comments" do not require reversal when made within the larger context of the evidence. **Minor**, 648 S.W.3d at 732.

The trial court did not abuse its discretion in overruling the defense's objection during the State's closing argument because the State's allegedly improper comment was made in response to Guest's claim of self-defense and not designed to inflame the passions or prejudices of the jury. *See Tate*, 561 S.W.3d at 491 (finding no abuse of discretion when the State's argument was "clearly permissible"). The State's allegedly

15

improper comment also had no decisive influence on the trial's outcome given the sum of evidence confirming Guest's guilt. *See* **Hobson**, 522 S.W.3d at 274 ("Here, the closing argument made no decisive difference nor was it clearly injurious."). Point II is denied.

## Conclusion

The trial court's judgment convicting Guest of voluntary manslaughter, armed criminal action, stealing, and unlawful use of a weapon is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS